## Case No. 14,058.

### TINKER v. VAN DYKE et al.

[1 Flip. 521;[1] 14 N. B. R. 112; 8 Chi. Leg. News, 235.]

Circuit Court, E. D. Michigan. March Term, 1876.[2]

EFFECT OF REPEALS AND AMENDMENTS UPON RIGHTS GIVEN BY STATUTES—BANKRUPT LAW—PENAL STATUTES REPEALED AND GENERAL EFFECT OF REPEAL OF LAWS.

1. The clauses in the bankrupt law [of 1867 (14 Stat. 517)] which give the power to an assignee to sue for and recover the amount of unlawful preferences paid to particular creditors are not penal in their nature, and when repealed are not subject to the rule of construction which applies in case of repeal of penal statutes.

2. Whenever substantial rights are created by statute or commercial contracts are regulated, the repeal of laws on which they depend, will not receive a retroactive application, unless the law expressly or by implication so declares. The cases deciding that this clause of the bankrupt law is penal, disapproved.

[Cited in Oxford Iron Co. v. Slafter, Case No. 10,637.]

3. Certain judgments hold that statutes imposing liabilities upon corporators in certain exigencies for debts of the corporation were penal and would not be enforced in other states. These are at war with the case in 2 Wall. 450 [Steamship Co. v. Joliffe], holding that the repeal of such clauses as to existing contracts impaired their obligation.

[Cited in Warren v. Garber, Case No. 17,196.]

4. The clause in section 5021, Bankrupt Law, amending section 39, where the word "knew" is used instead of the words "had reasonable cause to believe," does not apply to proceedings in bankruptcy commenced before Dec. 1, 1873.

[5. Cited in Crump v. Chapman, Case No. 3,455, to the point that, under the amendment of 1874, a sale which is an act of bankruptcy on the part of the insolvent is not void as to the vendee, unless the vendee knows that it is made in fraud of the provisions of the bankruptcy act.]

---

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

[2] Affirming Case No. 16,849.]

[In error to the district court of the United States for the Eastern district of Michigan.]

Alfred Russell, for plaintiff in error.
D. M. Dickinson, for defendant in error.

EMMONS, Circuit Judge. [Philip J.] Van Dyke was appointed trustee before the amendment of 1874 [18 Stat. 178], which so changed the former law as to require that a creditor obtaining a preference should know that the debtor was insolvent instead of "having reasonable cause to believe' he was so insolvent." The bankrupt law transfers all the property of the bankrupt to the assignee as of the day of adjudication. Van Dyke, for the benefit of creditors, had a right unconditionally to one thousand dollars, in the hands of [Lowell W.] Tinker, as the immediate conveyance of the adjudication under the former law, but, as his suit was not commenced nor tried before the amendment, it is claimed by the defendants, that it was necessary to prove under it, that he knew the insolvency of his debtor, and that "having reasonable cause to believe" was not sufficient.

It has been argued at two different hearings, with far more than ordinary pertinacity, that this clause in section 39 of the bankrupt act, is penal in that sense which brings it within the familiar rule that rights arising under such laws are gone by their repeal. It is said also to be remedial, so as to bring it within the rule of construction which applies statutory alterations of the mere form of the remedy to pending proceedings. The defense, also, with much confidence, relied upon the frequently misapplied rule that actions given by statute are gone by its repeal.

No question of constitutional power is involved in this discussion. The authority of congress to divest vested rights, and impair contracts in the enactment of a bankrupt law, is conceded. The question before us is purely one of interpretation: Did congress, having an undoubted right so to do, intend to make the new rule applicable to pending causes?

As a very general rule, when we have repeatedly ruled a point, as we have this one, sustained as it is, by so much express decision, we should not deem it necessary to prepare a formal judgment. The exceptional labor of the argument for the defendant, and an influential dictum by Judge Dillon, we think justify the attention we give it.

The following judgments expressly deciding this question, for the sake of that conformity which should characterize judicial rulings, ought to be followed, even if we did not as fully as we do, approve their principle.

Van Dyke v. Tinker [Case No. 16,849], is the report of this case in the court below. The learned district judge relies chiefly upon the provision in the amendatory act, that the alteration of section 39 here in question, shall apply to all cases of involuntary bankruptcy, commenced since Dec. 1, 1873, which he holds is equivalent to an express legislative declaration that it shall not apply to any cases commenced before that time. We see no answer to this argument. The repealing clause, properly construed and modified by the proviso of section 39, leaves the whole of this section as it formerly stood, in full force as to all causes pending before Dec. 1, 1873. Brooke v. McCraken [Case No. 1,932] is a very intelligent opinion, holding that the amendment to section 35 is not to be applied to pending proceedings; it notices the provision limiting the application of a similar amendment to section 39, and declares that the 35th section comes within the general principle that all laws affecting substantial rights, are to be applied to the future only. Judge Deady cites the following federal judgments, announcing this rule: Harvey v. Tyler, 2 Wall. [69 U. S.] 347; Steamship Co. v. Jolliffe, Id. 458; McEwen v. Den, 24 How. [65 U. S.] 244; U. S. v. Starr [Case No. 16,379]; Schenck v. Peay [Id. 12,450]; Ex parte Billing [Id. 1,408]; Ex parte Hope Min. Co. [Id. 6,681]. We have examined these cases; they fully sustain the application of the rule to the case before the court. Steamship Co. v. Jolliffe, 2 Wall. [69 U. S.] 458, was a case where a statute gave a pilot half fees for tendering his services. The tender was made, but before the action was brought, the statute was repealed, and another enacted in its stead, providing for the performance of the same duties. The opinion of Justice Field is somewhat ambiguous, but we think he does not intend to rest it upon the ground that by retroactive application of the law, the obligation of contracts would have been impaired, or the property of a citizen divested, without due process of law. He does call it a quasi contract, and speaks of the right as a vested one, but concludes this portion of his judgment by placing it upon the presumed intention of the legislature, and quoting Chief Justice Shaw, in Wright v. Oakley, 5 Metc. [Mass.] 406, where it is substantially said that when one statute is repealed, and another modifying it only contemporaneously entered in its stead, the old law may be considered as still in existence in reference to causes of action which accrued under it. We think that the argument of Judge Field intends to concede the power of the legislature, by express enactment, to have barred the recovery; but that in all cases where such rights were involved as those which he decided the pilots' in that case to be, the presumption was of a contrary intent. We think it a precedent for holding here, that the intention was, not to divest the unconditional right of the assignee to this sum of money. The right of the creditors was perfect, and should not

be divested without express enactment, or an implication wholly unambiguous.

In Hamlin v. Pettibone [Case No. 5,995]. Judge Hopkins very fully considers this question, and decides that the amendment is not to have a retroactive application to causes arising anterior to December, 1873. He relies not only upon the express limitation in the act to that period, but applies the rule that statutes affecting substantial rights divesting causes of action which have fully accrued, are not without express declaration or the strongest implication to be applied to past transactions.

In Hitchcock v. Way, 6 Adol. & E. 943, cited by him. an English court refused to apply ex post facto to a statute which took away a defense in gaming contracts, even in favor of a bona fide purchaser, without notice. And see In re Montgomery [Case No. 9,732]. Bradbury v. Galloway [Id. 1,764] follows from the preceding cases, and quotes, as quite decisive of this question, section 13 of the Revised Statutes, which provides "that the repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture or liability incurred under such statute, unless the repealing act shall so expressly provide, etc." The words "penalty" or "forfeiture" have no application here, unless the far fetched argument be tenable, that this clause in section 39 be penal; we elsewhere say we think it is not. The law cited disposes of this question in favor of the plaintiff if it is so, and the word "liability" would serve the rights of the assignee in this case, whatever may be its nature. Singer v. Sloan [Case No. 12,898], recently decided by Judge Dillon, contains a dictum relied on by the defendant to give this clause a retrospective application. Evidently the learned and usually careful judge had not, as he was not called upon to do, fully examined the subject. He cites Sedg. ot. & Const. Law, 129 et seq., that all rights dependent upon a statute fall by its repeal; but this same author, on page 134, in discussing the same subject, after having noticed one exception to the rule quoted by Judge Dillon, says that a second exception is constituted of those cases "which affect rights of action which have attached and become vested under the original law, and existing at the time of the repealing statute." The facts upon which the judgments rest, cited by Mr. Sedgwick in illustration of this exception, clearly show it is applicable to the case before us. The words here quoted are almost literally like those in the judgment of Justice Field in Steamship Co. v. Jolliffe [supra]. In re King [Case No. 7,781], by Justice Miller, held that the amendment providing that a bankrupt should be discharged although his assets did not pay 50 per cent., as provided by the original law, was applicable to cases commenced before the amendment in this respect; differing from the conclusion of Judge Blatchford in Re Francke [Id. 5,046]. It may well be that this clause was intended to apply as Justice Miller holds,

while that before us should not be construed to divest the action of the assignee.

Upon authority, the question comes before us with six well considered judgments, holding directly upon the question before us, that the amendment did not apply to proceedings in bankruptcy commenced before December, 1873. The dictum of Judge Dillon is all that we find opposed to it.

Beyond this reference to these judgments upon the question before us, we shall do little more than testify that we have gone over the ground of the argument, and that suitors have had the benefit of our consideration of the labor of their counsel.

The following cases, unquestionably resting upon the penal character of the rights which were held to be abrogated by a repeal of the law, are acquiesced in as sound and wholesome law: 21 Mich. 390; [State v. Baltimore & O. R. Co.] 3 How. [44 U. S.] 534. In the later case, Chief Justice Taney draws the line clearly between penal provisions in a law and its other clauses creating contracts and relating to substantial rights. 2 Dana, 330; 5 Rand. [Va.] 657; Anonymous [Case No. 475]; [Yeaton v. U. S.] 5 Cranch [9 U. S.] 281; [Norris v. Crocker] 13 How. [54 U. S.] 429,— are all of the same general character, and are no more appropriately cited here than a very great number of other like adjudications.

A few cases have been referred to upon statutes regulating political rights, supposed to be analogous to the clause now before us for construction. We see no similarity. In reference to such laws, it would require a very strong expression of the legislative will for the court not to apply them retrospectively in reference to all unclosed matters. Tivey v. People, 8 Mich. 128; People v. Green, 58 N. Y. 295; [State v. Baltimore & O. R. Co.] 3 How. [44 U. S.] 534; [Inglis v. Sailors' Snug Harbor] 3 Pet. [28 U. S.] 157; [Butler v. Com.] 10 How. [51 U. S.] 402; [Ex parte McCardle] 7 Wall. [74 U. S.] 506,—are all of such character.

Several judgments were cited and analyzed to show the power of the state and federal legislatures to effectuate the intention of parties by retroactive legislation, giving validity to imperfect contracts and insufficient action under former laws. This necessary and beneficent power is not questioned. All such laws should receive a most liberal construction to effectuate such purpose. Of this class are 16 Ohio, 377; 57 N. Y. 177. Similar adjudications in the federal and state courts are numerous.

Decisions upon statutes which affect the form of remedy only are equally foreign to the case before us; such are all the following cases in defendant's brief: Robinson v. The Red Jacket, 1 Mich. 173, and Moses v. The Missouri [Id. 507], referred to in it, contains the true distinction upon the subject. 21 Pick. 169; 9 Barn. & C. 750; 50 Mo. 554; 11 N. Y. 281,—are to like effect. The general subject treated in these cases is too familiar

to require additional citation and treatment.

To show that this clause which equally distributes all the property of a bankrupt among his creditors is penal, and consequently that a state court will not enforce it—the able judgment of Justice Christiancy in Voorhies v. Frisbie, 25 Mich. 476, and Bingham v. Claflin, 7 N. B. R. 412, are cited.

Whatever we might have said of those judgments had jurisdiction been declined, upon the ground that the federal courts were the more fit forum for such actions, we most emphatically dissent from that portion of the reasoning, upon which they rest, declaring this clause of the bankrupt law to be penal in its character and applying the inapplicable rule announced in Gelston v. Hoyt, 3 Wheat. [16 U. S.] 240, and The Antelope, 10 Wheat. [23 U. S.] 66.

One of these cases was in reference to a particular regulation of a foreign government, and the other a penal forfeiture to the United States. Their inapplicability to this clause of the bankrupt law is manifest. Neither the Michigan nor the Wisconsin court takes any notice whatever of any one of the following judgments, many of them by the most elaborate and convincing argument deciding the point directly the other way. Brown v. Cuming, 2 Caines, 33; Barstow v. Adams, 2 Day, 70; Barclay's Assignees v. Carson, 2 Hayw. [N. C.] 243; Kelly v. Holdship, 1 Browne [Pa.] 36; Sullivan v. Bridge, 1 Mass. 511; and in 1846, Dewey, J., in 10 Metc. [Mass.] 583, under the bankrupt law of 1841 cites the foregoing cases under the former law as setting at rest this question at that period. His discriminating judgment draws the distinction between a home national bankrupt law, which ex rigore operating upon persons and property within the state, passes title in præsenti to the assignee, and a foreign one who must come here claiming rights solely under his judicial appointment. In Stevens v. Mechanics' Sav. Bank, 101 Mass. 109, this principle was deemed so clearly applicable to the present bankrupt law that, as the court say, it was abandoned in argument. See fully in accord 102 Mass. 428; 7 Bush, 66; 64 Pa. St. 74.

We think these judgments could not have been called to the attention of the learned courts of Michigan and Wisconsin. These two opinions being recently cited in New York, called from the court of appeals in Cook v. Whipple [55 N. Y. 150], a citation of a portion of the preceding cases and a most pointed dissent from the assertion that this clause of the law had any element of a penal character. Some respect is due to so long and unbroken history, and we can hardly be asked to follow two judgments asserting principles so novel and at war with precedent. The adverse adjudications might be greatly multiplied.

Halsey v. McLean, 12 Allen, 438, and 33 Md. 487, and other similar adjudications holding that when laws impose liabilities upon the officers and shareholders of corporations for the nonperformance of some duty upon the ground that they are penal in their character, they will not be enforced in foreign jurisdictions, have been cited as analogies for holding this clause of the bankrupt law to be of a similar penal character. Whether these and the numerous other similar decisions collected and well analyzed in 33 Md. 487, are consistent with the judgment in [Hathorn v. Calef] 2 Wall. [69 U. S.] 10, we briefly consider hereafter.

A law imposing liability for the debt of another as a consequence of a wrongful omission of duty, is clearly distinguishable from one which provides for the equal distribution of a bankrupt's assets among his creditors.

It is no more penal to declare that a creditor who receives payment in violation of the bankrupt law shall hand over what he receives to the assignee, than that he who holds personal property belonging to the bankrupt shall be subject to an action in trover if he refuses to deliver it upon demand.

As well might it be said that an action on the case for fraud in violation of the common law is penal in its character, because the citizen is made to respond for the consequences of his wrong. The many judgments authorizing suits in state courts by assignees in bankruptcy, declare that their rights rest upon the same general principles as if they accrued under the common law.

In Grant v. Hamilton [Case No. 5,695], of which there is a very imperfect report only, which we argued when at the bar, an action was sustained in the federal court to recover back property won upon a horse race under a statute of Michigan.

Upon a very full review of judgments, Judge McLean held that the law was not a penal one, that it created property rights between citizen and citizen, and, like any other obligation created by law, could be enforced in the federal courts—a penal law, it was conceded, could not be. Numerous adjudications were cited to his honor, showing that the many state laws, authorizing recovery back of property, which passed from citizen to citizen, in violation of law, were not penal unless a greater amount was authorized to be recovered than was actually received.

These citations do not appear in his judgment. They have not been cited to us, and we have no time to reproduce them. They are all directly at war with the doctrine of the cases which hold the liability of corporations to be penal.

It would be unpardonable in a case like this to discuss at any length the rectitude of judgments, after having declared their inapplicability to the point in judgment.

The analogy, however, between the cases we have been considering and that of a suit to recover back money from a creditor who

has unlawfully received a preference, was so urgently pressed that we add a word in regard to them. These judgments are so many and from courts of such high respectability, that we should feel great reluctance in disregarding them. We submit, with great respect, that they have entirely misapplied the doctrines upon which they rest. A law which creates a liability between citizen and citizen, as further security for the contracts of a corporation of which the obligated person is a member, has in it no penal element whatever in that sense which makes one court refuse to enforce the penalties of foreign governments. The history of this principle shows that it had its origin in the political hostility of opposing nations; laws intended to guard the revenue; penalties to enforce the political regulations of other countries were not enforced by tribunals, whose government was presumed to be opposed to the policy which such laws were intended to promote.

The rule never had any application to the colonies and much less to the several states and the federal judiciary after we became one nation. with a common commerce and a common interest in the power, peace, and prosperity of the whole people.

When penal actions founded upon the laws of other states were rejected by our courts, as in some instances upon the ground of comity they might have been, this old rule should not have been invoked.

All those provisions of law intended to secure the performance of private contracts, and in which the property rights of private citizens alone were concerned, should never have been deemed penal statutes within the rule excluding jurisdiction.

The federal courts would decline jurisdiction in a qui tam action under a state law for a penalty for a violation of the Sabbath, for defrauding a state tax law or any other law of a purely political character; here the rule would be applicable; to extend it to that large and rapidly growing class of cases, where the citizens of one state have rights of action against those of another, under laws creating liabilities for corporate premises. will make a fearful inroad upon the jurisdiction of the federal judiciary.

A very large percentage of all the commerce, manufactures and trading of the country is coming to be done by state corporations; the citizen relies in large degree upon the security afforded by those obligations imposed upon officers and shareholders for an omission of their duty. To call this obligation a penalty is to exclude the jurisdiction of the federal courts by a mere name. We can see no distinction in principle between a state statute which should repeal a provision in a railroad or bank charter, rendering liable directors and shareholders if they incurred debts beyond the amount of the capital paid in, or failed to make proper scrutiny and publicity of the accounts of their corporation, and a law divesting such a liability, unanimously held to be unconstitutional in Hawthorne v. Calef [supra].

In this case a railroad charter provided that shareholders should be liable to the extent of their shares for the debts of the corporation, if there was a deficiency of corporate assets. This provision was repealed anterior to the bringing of an action. Held, it violated the obligation of the contract implied between the shareholders and the creditor growing out of the statute and their reciprocal action under it. In this case the liability was fully statutory; there was no liability at common law on the part of the corporators for the debts of the corporation.

The court cites as analogous, Woodruff v. Trapnall, 10 How. [51 U. S.] 190, in which it was held that the repeal of a law which made bills issued by a bank receivable in payment of state debts, could not deprive a citizen of the liberty of so applying them. Corning v. McCullough, 1 Comst. [N. Y.] 47, is also approbated, which quite fully accords with the principles stated.

Between the statute involved in [Hawthorne v. Calef] 2 Wall. [69 U. S.] 10, and those which the state judgments cited have held to be pure penalties, and therefore cognizable only in the courts of the state which enacts them, we see no such difference in principle as to cause a circuit court of the United States to refuse to entertain an action upon the ground that one is penal, and to entertain it under the other because it is a contract.

To erect such a distinction into a rule of law, would enable state legislatures, by the mere form and phraseology of a statute, to create property rights of which the federal courts could take no cognizance, and thus do indirectly, what, in Insurance Co. v. Morse, 20 Wall. [87 U. S.] 445, the supreme court said they could not do directly.

This liability constitutes a part of the law of the contract. See, also, Ochiltree v. Railroad Co.. 21 Wall. [88 U. S.] 252, 253.

The rule so frequently quoted in the books that what is created by statute may be taken away by statute was also largely relied upon at the bar. We remarked during the argument, and now repeat, there never was any such rule administered anywhere.

When remedies are created, penalties enacted, crimes defined and punished. political regulations established by statute, they may be abrogated by their appeal.

When repealed, the presumption is in favor of a retroactive application. It is a misdescription of the principle involved in these classes of cases, to say the right of action is gone because they are statutory.

They are gone on account of the nature of the statute, the right regulated, and the persons to be affected; because, in these peculiar instances. and other analogous cases, statutory rights are abrogated by repeal of the law, it by no means follows that all

other statutory rights of a different character, creating substantial property rights, upon which business transactions between citizen and citizen are vested, fall in the same circumstances.

Large numbers of the latter class are protected by various constitutional inhibitions —federal and state.

When you pass beyond the protection of the constitution, and arrive at those vested rights which involve substantial property values, then, although the abstract proven may exist to destroy them, the presumption will be that the legislature did not intend to do so, unless it expressly so declares.

From the multitude of cases so declaring, we cite in addition to those already referred to, only the following: Dash v. Van Kleeck, 7 Johns. 477, which contains a full discussion by most able judges, and reviews the elementary writers and decisions down to their date. The duty of construing all laws prospectively, where rights are affected, is strongly insisted upon; and, see 4 Serg. & R. 401; [Ogden v. Blackledge] 2 Cranch [6 U. S.] 272. No principle is more familiar in the federal jurisprudence.

It was also argued that, however courts might deal with affirmative provisions of law which prescribe new rules of conduct, and create new obligations, applying them prospectively only when such appeared to be the intention of the law-maker, that no such liberty of interpretation existed when a statute was unconditionally repealed.

We see no difference whatever, in principle, between the two cases, deeming it, in all instances, a mere matter of construction, depending upon the subject matter and language of the law. We should have thought it unworthy of consideration, but for the answer made by Justice Cowen, in Butler v. Palmer, 1 Hill, 324, to some judgments cited in favor of a wholly prospective application of a law in judgment before him.

He does distinguish them by saying they are cases of positive enactments, and not unconditional repeals. If we might impute to that learned judge the absurdity of saying, that in no case could the legislature repeal a clause in a statute, saving all rights accrued under it, his language, literally interpreted, might be read to mean that in every case of repeal, irrespective of circumstances, the courts are forbidden to confine its effects to future cases only. He cites many old English judgments in reference to political, penal, remedial and criminal statutes, in reference to which such a rule of presumption is rightfully declared; but all that is meant in the judgment, is that in case of a repeal, stronger language and more persuasive circumstances are required to authorize a limited application than will produce the same effect in reference to a new affirmative enactment.

The judgment, instead of being at war with our own, when rightfully understood, is an argument to show that in every instance the legislative will is to be ascertained and executed.

———

TINKER (VAN DYKE v.). See Case No. 16,-849.

TINKLEPAUGH (UNITED STATES v.). See Case No. 16,526.

TINSTMAN (FIRST NAT. BANK OF MT. PLEASANT v.). See Case No. 4,805.

TIOGA R. CO. (BLOSSBURG & C. R. CO. v.). See Case No. 1,563.

TIPPETT (TARLTON v.). See Case No. 13,-754.

TIPTON (MORGAN v.). See Case No. 9,-809.

TIRRELL (GILBERT & B. MANUF'G CO. v.). See Case No. 5,417.