In re Yvonne **HENRY**, Bankrupt.

**NEW YORK STATE HIGHER EDUCATION SERVICES CORPORATION,**
**Plaintiff,**

v.

**Yvonne HENRY, Defendant.**

**Bankruptcy No. 78 B 1006 R.**

United States Bankruptcy Court,
S. D. New York.

Nov. 9, 1979.

Regan, Goldfarb, Heller, Wetzler & Quinn, New York City, for plaintiff.

Laurence H. Pearson, Community Law Offices, New York City, for bankrupt.

## DECISION ON MOTION TO DISMISS COMPLAINT

EDWARD J. RYAN, Bankruptcy Judge.

The bankrupt, Yvonne Henry, borrowed $4,500 from Chemical Bank with repayment guaranteed by the New York State Higher Education Services Corporation (hereinafter NYSHESC). The bankrupt graduated in May of 1976 and on December 12, 1977, she executed a promissory note to repay Chemical Bank the $4,500 in installments beginning April 1, 1978. She defaulted on the note whereupon NYSHESC purchased the promissory note from Chemical Bank in accordance with their guarantee agreement.

On May 31, 1978, the bankrupt filed her voluntary petition in bankruptcy. On August 29, 1978, the plaintiff, NYSHESC, instituted this adversary proceeding to deny discharge of the bankrupt's liability for payment of student loan debts to the NYSHESC. On October 27, 1978, this court issued an order releasing the bankrupt from all dischargeable debts. On November 6, 1978, § 1087–3 was repealed pursuant to the Bankruptcy Reform Act of 1978, Pub.L.No. 95–598, 92 Stat. 2549 (1978) (hereinafter the Reform Act).

Section 1087–3 provides, in pertinent part that:

> (a) A debt which is a loan insured or guaranteed under the authority of this part may be released by a discharge in bankruptcy under the Bankruptcy Act only if such discharge is granted after the five-year period (exclusive of any applicable suspension of the repayment period) beginning on the date of commencement of the repayment period of such loan . . . . .

20 U.S.C. § 1087–3 (1976).

Congress enacted this section in direct response to the losses that were incurred under the Guaranteed Student Loan Program and attributed to student bankruptcies. S.Rep.No.882, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. & Admin. News, p. 4713.

Under the Bankruptcy Act there was no bar to the discharge of educational loans. The debt forgiving aspects of the Bankruptcy Act, however, were not intended to apply to graduating students in the unique position of having relatively large debt liabili-

ties, assets of little or no value and the likelihood of relatively high future earnings. See, S.Rep.No.882, 94th Cong., 2d Sess., at 19, 1976 U.S.Code Cong. & Admin. News, pp. 4713, 4731.

In drafting the Reform Act, Congress intended to preserve the policies embodied by § 1087–3 as evidenced by the inclusion of § 523(a)(8). This section provides that a debtor is not discharged from any debt "to a governmental unit, or a non-profit institution of higher education, for an educational loan, unless—

"(A) such loan first became due before five years before the date of the filing of the petition; . . . ."

11 U.S.C. § 523(a)(8) (1978).

The root of the problem is that § 317, the repealer for § 1087–3, takes effect "on the date of enactment of [the Reform Act]." Reform Act § 402(d). The date of enactment of the Reform Act was November 6, 1978, the day President Carter signed the bill into law. Section 523(a)(8), on the other hand, takes effect on October 1, 1979. Reform Act § 402(a). Likewise, § 403(a), the savings provision of the Reform Act that would otherwise preserve the effects of § 1087–3, takes effect on October 1, 1979. Hence, from November 6, 1978 to October 1, 1979, educational loans under the Guaranteed Student Loan Program were apparently not excepted from discharge.

The bankrupt moves to dismiss for failure of NYSHESC to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). This presents the question whether § 1087–3 still applies to a case initiated prior to, but still pending as of the date of repeal of the provision. Since no bar to the discharge other than § 1087–3 existed as of November 6, 1978, the bankrupt asserts that the claim seeking denial of discharge must as a matter of law be dismissed.

■ In response to the bankrupt's motion, NYSHESC argues that § 1087–3 continues to be effective in proceedings where the petition in bankruptcy was filed prior to its repeal. In support of this contention NYSHESC relies first upon 1 U.S.C. § 109, the federal savings provision; second, upon

the savings clause in the Reform Act, § 403(a), and third, upon legislative intent as evidenced by the inclusion of § 523(a)(8) in the Reform Act.

Insofar as the savings clause of the Reform Act, § 403(a) became effective as of October 1, 1979, it applies to this proceeding and therefore the bankrupt's motion to dismiss must be denied. Section 403(a) provides that:

A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this [Reform Act] had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the [Reform Act] had not been enacted.

Section 403(a).

When the bankrupt filed her petition on May 31, 1978, this case was "commenced under the Bankruptcy Act." This proceeding is certainly a matter relating to the bankrupt's petition. The rights of the parties in connection with this matter are governed by the law applicable "as if the [Reform Act] had not been enacted." Section 403(a). If the Reform Act had not been enacted, § 1087–3 would not have been repealed, but rather, would have continued to control in this matter. Under these circumstances, NYSHESC has stated a claim upon which relief can be granted.

Nevertheless, considering that the motion to dismiss was filed prior to the effective date of § 403(a), the court feels compelled to touch upon the two other contentions made by NYSHESC against the motion. First, the applicability of 1 U.S.C. § 109, and second, legislative intent, will be considered.

■ The federal savings provision reads: The repeal of any statute shall not have the effect to release or extinguish any . . . liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall

be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such . . . liabilit[ies].

1 U.S.C. § 109 (1976). This provision was originally enacted to abrogate the common law rule announced in *United States v. Tynen*, 78 U.S. (11 Wall.) 88, 20 L.Ed. 153 (1871), that any penalties incurred under a statute fell upon repeal of that statute if specific reservation was not made in the repealer. Section 109 was aimed primarily at the unintended technical abatements that had resulted under the *Tynen* rule. *Hamm v. Rock Hill*, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300 (1962). The section is "a rule of construction applicable, when not otherwise provided, as a general saving clause, to be read and construed as a part of all subsequent repealing statutes, in order to give effect to the will and intent of Congress." *Hertz v. Woodman*, 218 U.S. 205, 217, 30 S.Ct. 621, 624, 54 L.Ed. 1001 (1910).

Since the Reform Act savings provision was not effective until October 1, 1979, NYSHESC argues that § 109 should be applied to save § 1087–3. The reliance of NYSHESC upon § 109, however, is misplaced since § 109 was not intended to apply to statutes in the nature of § 1087–3. Section 109 applies to "any . . . liability *incurred under such statute* (emphasis supplied)" that is, it applies to *de novo* liabilities. The fact that liability for the $4,500 debt could have been discharged in bankruptcy but for the existence of § 1087–3 does not vary the fact that this liability was created by the parties when they entered into a legal contract. NYSHESC cites a total of eight cases in support of its point and each one deals with a *de novo* liability created by the repealed statute. *E. g.*, *American President Lines, Ltd. v. S. Woolman, Inc.*, 239 F.Supp. 833 (S.D.N.Y.1964); *Tinker v. Van Dyke*, 23 F.Cas. 1297 (C.C. Mich.1876) (No. 14,058). Section 109 may not be applied in this case to preserve the effects of § 1087–3.

 The second additional contention of NYSHESC is that the repeal of § 1087–3

should not be given effect because Congress did not intend to allow the discharge in bankruptcy of student loans from November 6, 1978 to October 1, 1979. Where a court is faced with a provision that appears to go against the object and policy of the act of which it is part, the court's objective is to "ascertain the congressional intent and give effect to the legislative will." *Philbrook v. Glodgett*, 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975).

Under the theory of the NYSHESC, this court is faced with an unusual problem of construction in that the court is being asked to disregard what is otherwise a clear expression of what the legislature intended. Nevertheless, a provision which is the result of obvious mistake should not be given effect, particularly when it overrides common sense and evident statutory purpose. *United States v. Brown*, 333 U.S. 18, 25, 68 S.Ct. 376, 92 L.Ed. 442 (1948). Moreover, "a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers." 421 U.S. at 714, 95 S.Ct. at 1898.

That the gap created by the repeal of § 1087–3 was a mistake unintended by Congress is manifest on four counts. First, the inclusion of § 523(a)(8) within the Reform Act illustrates the congressional intent to preserve the policies underlying § 1087–3. Second, statements made on the floors of the Senate and House of Representatives in considering corrective legislation to the Reform Act explicitly refer to the gap as the unintended result of mistake. 125 Cong. Rec. S9160 (daily ed. July 11, 1979) (remarks of Sen. DeConcini); 125 Cong.Rec. H6999 (daily ed. August 1, 1979) (remarks of Rep. Edwards); 125 Cong.Rec. H2758–60 (daily ed. May 7, 1979) (remarks of Reps. Edwards, Hyde, Sensenbrenner, Michel, Ertel, Pickle and Clausen). Third, a corrective bill, Act of August 14, 1979, Pub.L.No.96–56, 93 Stat. 387, was passed by the House and the Senate to re-implement the equivalent of § 1087–3. Finally, the legislative history of the Reform Act indicates that the inclusion of § 317 within the group of provi-

sions that were to take effect upon the date of enactment of the Reform Act was an oversight. *New York State Higher Education Services Corp. v. Kohn*, No. 77–B–2469, 5 Bank.Ct.Dec. 419 (S.D.N.Y. June 20, 1979). Since the gap created by the repeal of § 1087–3 was unintended by Congress and the result of mistake, the provisions of § 1087–3 would still have been applied to this case, and the bankrupt's motion to dismiss would nonetheless have been denied had this motion been decided prior to October 1, 1979.

The motion is denied. The parties may proceed to the issue of undue hardship as provided for by § 1087–3. It is so ordered.