## In re CARTER.

Circuit Court of Appeals, Second Circuit. April 15, 1929.

No. 238.

Crawford & Tuska, of New York City (Benjamin Tuska, of New York City, of counsel), for appellants.

Abraham C. Cohen, of New York City, for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. The bankrupt, for a number of years prior to November, 1924, did business on Leonard street, in New York City, as a cotton goods broker under the trade-name of the George Carter Company. In the autumn of 1924 he became financially embarrassed, and was dispossessed from his premises. Thereafter he organized a corporation on March 12, 1925, known as George Carter Company, Inc., and he and his brother conducted the business of cotton goods brokers at 350 Broadway, through the latter corporation. He was the president, and subscribed and paid for 65 shares of the capital stock, of the par value of $650. His brother subscribed and paid for the remaining 35 shares of stock.

On May 27, 1926, George Carter filed a voluntary petition in bankruptcy, and in his schedules swore that he had "no assets."

Upon an application for a discharge, certain creditors filed objections, among others that the bankrupt had made a false oath, in failing to include in his schedules various items of property.

The first items were commissions to the amount of $441.81 and $280.05, earned in February and March, 1925. These commissions accrued more than a year before the petition in bankruptcy was filed. There is no evidence that they ever were paid, or, if paid, that they were not spent long before bankruptcy.

The second item is $1,500, received by the bankrupt for the sale of a house at Staten Island in November, 1924. This money, he said, was turned over to men in his employ, and in part spent by himself. Here again the item was too remote to require further explanation.

The third item is 65 shares of stock of the corporation already referred to. Carter had paid $650 in cash for this stock when it was issued, and swore that he turned it over, in March, 1925, to one Amy Robertson (whom he described as his "managing housekeeper") to secure a loan from her of $3,600, which he had obtained in order to set up the corporate business. To confirm his testimony in this regard, he produced a written agreement, dated March 19, 1925, and signed by both parties, whereby the 65 shares of stock and also the interest of the bankrupt in a certain contract bearing date April 12, 1923, between himself and Jones, Straib & Shloss, were assigned to Robertson as collateral security for the repayment of the $3,600 loan. In his examination before the master, the bankrupt stated that he borrowed additional

sums from Amy Robertson, making, with the $3,600, a total of about $7,000, and he vaguely claimed to have finally transferred to her the entire equity in the 65 shares in part extinguishment of his indebtedness to Robertson of $3,600, and scheduled the $3,600 as unsecured.

■ The fourth item objected to consisted of certain office furniture that the bankrupt says was stored at the time he was dispossessed from Leonard street, and that he turned over in part to the corporation after it was organized in March, 1925. Much of the furniture so stored, he said, was taken by the storage company in payment of its charges.

The third and fourth items above mentioned may justify a suspicion that the bankrupt remained the owner of the property embraced, and was deliberately covering it up; but his testimony remains uncontradicted, and we are unable to say that the objecting creditors have shown that this property was deliberately omitted from his schedules. The office furniture was evidently of very slight value, and the equity in the stock of the corporation, even assuming that Amy Robertson did not obtain an outright transfer, could hardly have had any value, if it was security for her loan of $3,600. There was no evidence that his interest in the contract of 1923 was worth anything. We do not think that a bankrupt ought to be deprived of his discharge for failing to schedule such inconsiderable and valueless items as these. We think that the master and court properly overruled the objections to the discharge of the bankrupt, with the exception of those based upon the item about to be mentioned.

■ But his failure to explain an apparent indebtedness of the corporation for his salary was more important. He reported it at about $3,000 in his income tax return, and so did the corporation of which he was president. The corporate balance sheet of March 12, 1926, contains the entry of $3,000 as due Carter for salary. He more than once testified that he had no salary from the corporation, and he said that he owed it about $1,200 for advances. Such inconsistencies and failure to give any intelligible explanation of the relations between himself and his corporation ought, in our opinion, to bar his discharge. He was the president of the corporation, and certainly should have

been in a position to explain his relations to it.

Since the amendment to the Bankruptcy Act of May 27, 1926 (11 USCA § 32), a bankrupt may not be discharged if he "has failed to explain satisfactorily any losses of assets or deficiency of assets to meet his liabilities." Section 14b (7). Here there was an apparent asset of $3,000, offset pro tanto, according to the balance sheet of March 12th, by George Carter loan account, $1,266.66. In other words, there was, according to the books of the bankrupt's own corporation, a net amount of $1,733.64 due him shortly before he filed a voluntary petition. No satisfactory explanation has been given as to what became of it, and why it was not available as an asset.

It may be argued that the amendment to the Bankruptcy Act of May 27, 1926, providing as an additional bar to a discharge that the bankrupt "has failed to explain satisfactorily any losses of assets or deficiency of assets to meet his liabilities," was not in effect until about three months after the petition in bankruptcy was filed, and cannot, therefore, be regarded as applicable; but, as was said by the Circuit Court of Appeals for the First Circuit in Matter of Seaholm, 136 F. 144, "there was no vested right in the bankrupt to have the law stand as it was."

The Circuit Court of Appeals for the Fourth Circuit, in construing the amendment to the Bankruptcy Act in 1926, held that the grounds which would bar a discharge were determined by the law in force at the time the judge passed on the question of discharge, and not by the law in force at the time of filing the petition in bankruptcy. Lockhart v. Edel, 23 F.(2d) 912.

■ It is true that the specifications dated January 3, 1927, did not apparently rely on subdivision 7 of section 14b, supra; but specification IV (f) raised the question of the failure of the bankrupt to schedule his salary indebtedness. The facts, therefore, upon which a bar to the bankrupt's discharge under subdivision 7, supra, might be based, were open to the consideration of the court below.

The order is reversed, with directions to deny a discharge to the bankrupt, on the ground that he has failed to explain satisfactorily the loss of salary, or the proceeds thereof, apparently due him from the George Carter Company, Inc.