**In the Matter of Carmelo PICCIONE, Bankrupt.**

**CONNECTICUT STUDENT LOAN FOUNDATION, Plaintiff,**

v.

**Carmelo PICCIONE, Bankrupt, Defendant.**

**Bankruptcy No. H–78–647.**

United States Bankruptcy Court, D. Connecticut.

Nov. 30, 1979.

---

Christine M. Whitehead, Hartford, Conn., for plaintiff.

Dean F. Radke, Hartford, Conn., for defendant.

## MEMORANDUM AND ORDER

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

This case raises another facet of the question of when a student loan, in view of statutory changes wrought by the Bankruptcy Reform Act of 1978, is a debt dischargeable in bankruptcy. The defendant-bankrupt, Carmelo Piccione ("Piccione"), filed a voluntary petition on July 30, 1979, and "was released from all dischargeable debts" by a discharge granted by the Court on October 10, 1979. The plaintiff, Connecticut Student Loan Foundation ("CSLF") filed a complaint to determine that the debt owed to it as guarantor of an unpaid note representing a student loan "is not dischargeable". Piccione has filed a

1. In this opinion, the Bankruptcy Act of 1898 will be called the Bankruptcy Act, and the Bankruptcy Reform Act of 1978 will be called the Bankruptcy Reform Act (BRA).

motion to strike the complaint, with which motion this memorandum deals.

### I.

Until 1976, student loans were treated as any other debts not especially excepted from discharge by the Bankruptcy Act.[1] In that year, amendments to the Higher Education Act of 1965 ("HEA") included a new section 439A (20 U.S.C. § 1087-3) which made student loans authorized by the HEA nondischargeable in bankruptcy during the first five years of the repayment period except for "undue hardship". Such was the law until November 6, 1978. On that date, the President signed the BRA, Public Law 95-598, which act contained in § 317 of Title III an immediate repeal of § 1087-3. In general, most other provisions of the BRA became operative on October 1, 1979. At the time of its passage, P.L. 95-598 provided that for cases arising under the BRA, i. e., on or after October 1, 1979, § 523(a)(8) of the BRA would except the discharge of student loan debts under circumstances generally similar to those set forth in § 1087-3. Although some case law has held that the "savings provision" of the BRA, § 403, *continued* § 1087-3 in force until October 1, 1979, the preponderance of bankruptcy court decisions has acknowledged that a gap was created by P.L. 95-598, and that during the period from November 6, 1978 to October 1, 1979, there was no law in effect prohibiting the discharge of debts arising from student loans.[2] This gap was narrowed by remedial legislation in Congress essentially reenacting § 1087-3 by adding it as category number 9 to section 17(a) of the Bankruptcy Act until October 1, 1979, effective August 14, 1979 (P.L. 96-56). But for proceedings which commenced prior to August 14, 1979, and still pending on October 1, 1979, the question remains, what law is to be applied

2. So held in this district in *Matthews v. Connecticut Student Loan Foundation*, No. B-78-390, CCH Bankruptcy Law Reports, ¶ 67,049 (old edition), and followed in *Connecticut Student Loan Foundation v. Adams*, No. H-78-647.

when contests concerning dischargeability of student loans arise?[3]

Piccione, in moving to strike the complaint of CSLF,[4] contests the nondischargeability of his debt based on a student loan. He argues that on the date of his petition, July 30, 1979, no law prohibited discharge of his debt. He further contends that the law (or lack thereof) to be applied to the issue of whether a debt is affected by a discharge is the law as it existed at the time of his *petition.* CSLF claims it is the law at the date of *discharge.* In support of his contentions, Piccione cites a series of U.S. Supreme Court decisions which stress the importance of the date of filing a petition in bankruptcy in structuring the bankruptcy conceptually and determining the rights of creditors. The language of these decisions is often sweeping and seemingly unequivocal. In general, these decisions support the principle stated in *United States v. Marxen,* 307 U.S. 200, 207, 59 S.Ct. 811, 815, 83 L.Ed. 1222 (1939), that "the rights of creditors are fixed by the Bankruptcy Act as of the filing of the petition in bankruptcy". *Marxen* itself involved a contested priority asserted by the United States against a trustee in bankruptcy. It had nothing to do with discharge of the bankrupt. In *White v. Stump,* 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301 (1924), the bankrupt attempted to file for record a homestead exemption under Idaho law after his petition in bankruptcy was filed. The decision was that exemptions under state law must be tested by the situation when the petition in bankruptcy is filed. Again, the language is very pointed, but the issue of discharge is not present. *Everett v. Judson,* 228 U.S. 474, 33 S.Ct. 568, 57 L.Ed. 927 (1913) dealt with the issue of when rights vest in the trustee under § 70a of the Bankruptcy Act, and not with discharge. *Goggins v. Division of Labor Law Enforcement of California,* 336 U.S. 118, 69 S.Ct. 469, 93 L.Ed. 543 (1949) and *Small Business Administration v.*

*McClellan,* 364 U.S. 446, 81 S.Ct. 191, 5 L.Ed.2d 200 (1960) are both cases seeking to determine the time and effect of vesting of U.S. tax liens and debts. The only case cited by the defendant which does involve an issue of discharge is *Zavelo v. Reeves,* 227 U.S. 625, 33 S.Ct. 365, 57 L.Ed. 676 (1913). This case involved a bankrupt who, in the interim between the filing of his petition and the date of his discharge, gave a new promise of payment to one of his creditors. The creditor claimed the new promise revived the debt; the bankrupt claimed that this could not be done prior to discharge. The court concluded that "an express promise to pay a provable debt is good although made after the filing of the petition and before discharge". *Id.* at 631, 632, 33 S.Ct. at 368. *Zavelo* is, therefore, also not in point. Despite the broad nature of some of the language in these cases which emphasizes the importance of the date of the petition, no Supreme Court case to which my attention has been called involves issues raised here. Cf. *Friend v. Talcott,* 228 U.S. 27, 33 S.Ct. 505, 57 L.Ed. 718 (1913).

The single example of a bankruptcy court decision which unequivocally supports the result desired by Piccione is *In re Chris Calvin Carpenter,* 5 Bankr.Ct.Dec. 577. In *Carpenter,* the date of filing of the petition in bankruptcy was August 1, 1978, before the gap. Discharge was granted December 14, 1978. A creditor claimed that the law concerning dischargeability of debts as it existed at the time of the petition should apply. The court agreed, asserting that "the critical date is the date of the petition applying for a discharge. If then the rights of the parties were vested, the subsequent repealer does not operate to change the relationship of the parties". *Id.* at 578. In support of this assertion, that court cited three cases having to do with criminal sen-

---

**3.** There is no requirement that this contest arise only in the bankruptcy court. It can arise in other federal and state courts as well. Further, there is no time limit set by the bankruptcy court for initiating such cases.

**4.** The propriety of this form of motion has not been raised.

tencing and retroactivity.[5] No case involving bankruptcy is cited.

In March, 1979, this Court decided *Adams, supra.* In that case, it was held that the law to be applied in determining whether a debt was affected by a discharge was the law as it existed at the date a discharge was granted.[6] Since *Adams* was decided, fifteen reported decisions bearing upon the effect of the repeal of § 1087–3 have been located.[7] Although candor requires the observation that there is little uniformity of reasoning in these cases, it is significant that eight of them claim to apply the law as it existed at the time of discharge.[8] Four of these decisions adopt the "savings clause" argument that there never had been a repeal.[9] Only one case supports the result sought by Piccione.[10] Thus, the significant weight of the decisional law in the bankruptcy courts supports the position taken in *Adams.*[11]

---

**5.** *United States v. Bradley*, 455 F.2d 1181 (1st Cir., 1972); *United States v. Fiotto*, 454 F.2d 252 (2nd Cir., 1972); *United States v. Kirby*, 176 F.2d 101 (2nd Cir., 1949).

**6.** Relying on *In re Sloss*, 192 F.Supp. 136 (S.D.N.Y., 1961):

> Three Courts of Appeal, ours, the First, and the Fourth Circuits, have held that so long as the rights of parties have not become fixed, the law which governs is that which is in effect at the time the application for a discharge is passed upon, and not that which was in force when the petition in bankruptcy was filed. *Id.* at 137.

**7.** They are, in order of decision, *In re Frances Payton* (Payton I), 4 Bankr.Ct.Dec. 976 (11/3/78); *In the Matter of Robert N. T. Taylor*, 19 CBC 632 (12/8/78); *In re Frances P. Payton* (Payton II), 4 Bankr.Ct.Dec. 1126 (1/4/79); *In the Matter of Allan Curtis Edson and Antoinette Edson*, 4 Bankr.Ct.Dec. 1191 (1/22/79); *In re Chris Calvin Carpenter*, 5 Bankr.Ct.Dec. 577 (2/8/79); *In the Matter of Paul R. Adamo, et al.*, 20 CBC 194 (3/16/79); *In re Rodney Anthony Amadori, et al.*, 5 Bankr.Ct.Dec. 187 (4/5/79); *In the Matter of Marcia Lee Christopher, et al.*, 5 Bankr.Ct.Dec. 214 (4/5/79); *In the Matter of Delfina Espronceda*, 5 Bankr.Ct.Dec. 267 (4/18/79); *In re Frances P. Payton* (Payton III), 5 Bankr.Ct.Dec. 402 (4/17/79); *In re Kevin T. Cothren*, 5 Bankr.Ct.Dec. 597 (5/23/79); *In the Matter of Leonard Anthony Kohn*, 5 Bankr.Ct.Dec. 419 (6/20/79); *In re Mark S. Weinstein and Linda S. Weinstein*, 5 Bankr.Ct.Dec. 503 (6/26/79); *In re Deborah Lee Johnson*, 5 Bankr.Ct.Dec. 532 (6/27/79); and *In the Matter of Kristin T. Erickson*, 5 Bankr.Ct.Dec. 734 (7/27/79).

**8.** They are: *The Payton* trilogy, *Adamo, Amadori, Christopher, Espronceda,* and *Johnson.*

**9.** *Edson, Kohn, Weinstein,* and *Erickson.*

**10.** *Carpenter,* discussed *supra.* Two cases, *Taylor* and *Cothren,* are inconclusive as to the issue of law to be applied.

**11.** The cases most often cited by decisions applying the law as it existed at the time of discharge are *In re Seaholm*, 136 F. 144 (1905); *Royal Indemnity Co. v. Cooper*, 26 F.2d 585 (4th Cir. 1928); *Lockhart v. Edel*, 23 F.2d 912 (4th Cir. 1928); *In re Carter*, 32 F.2d 186 (2d Cir., 1929); and *In re Sloss, supra.* These cases predated the adoption of § 17(c) and Bankruptcy Rule 409. Thus, when these cases refer, as nearly all do, to the time when the issue of discharge is to be determined, they do not speak in terms of dischargeability. The bankruptcy court decisions which look to these cases for their law do not, in some instances, distinguish between the date of discharge and the date of hearing a complaint as to dischargeability of an individual debt. The point to note is that these dates are never likely to be identical. In the eight reported cases, it is not a simple matter to determine from the language of opinion just which date relating to discharge has been chosen. An example of this may be seen by comparing two bankruptcy decisions handed down in the Western District of New York by Hayes and McGuire JJ., respectively. In *Adamo* (cited *supra* n. 7), Judge Hayes concluded the law at the time of decision on dischargeability controlled.

Judge McGuire in *Amadori* (cited *supra* n. 7) disagreed:

> The cases cited in *Adamo* [*Seaholm, Carter, Sloss*] . . . deal with changes in the law vis-a-vis a bankrupt's *entitlement* to a discharge. In dischargeability proceedings, on the other hand, we deal not with the question of a bankrupt's entitlement to a discharge, but rather with the effect of that discharge upon specified liabilities. See *Friend v. Talcott*, 228 U.S. 27, 33 S.Ct. 505, 57 L.Ed. 718 (1913). The order of discharge, it should be noted, speaks not as of the filing of the bankrupt's petition, but as of the date of its entry. Cf. *Lockwood v. Exchange Bank*, 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061 (1903). Moreover, it clearly is in the context of the effect or status of a debt vis-a-vis the order of discharge that this Court's dischargeability jurisdiction arises. See *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934), 5 Bankr.Ct. Dec. at 188.

Judge McGuire goes on to hold that the law to be applied is "that existing at the time of the

■ The Court has noted nothing in the cases offered by the bankrupt to lead it to retreat from its holding in *Adams.* It is, therefore, determined that the law to be applied in deciding the dischargeability *vel non* of Piccione's debt to CSLF is the law as it exists on October 10, 1979, the date the Court entered a discharge releasing the defendant from all of his dischargeable debts.

## II.

■■ A holding that the law as of the date of discharge governs is not, however, of itself, dispositive of the case before me. It is now necessary to establish *what* law was in effect at the time of *this* discharge. The problem is fundamentally one of statutory construction. A careful consideration of the relevant statutes is in order.

On November 6, 1978, the BRA, P.L. 95–598 was enacted. It contained the following pertinent sections:

§ 401.(a) The Bankruptcy Act is repealed.

.    .    .    .    .

§ 402.(a) Except as otherwise provided in this title, this Act shall take effect on October 1, 1979.

.    .    .    .    .

(d) The amendments made by sections . . . 317 [repealer of 20 U.S.C. § 1087–3] . . . [etc.] of this Act shall take effect on the date of enactment of this Act.

.    .    .    .    .

§ 403.(a) A case commenced under the Bankruptcy Act . . . shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted.

On August 14, 1979, P.L. 96–56, "An Act to amend the Bankruptcy Act to provide for

the nondischargeability of certain student loan debts guaranteed or insured by the United States" was passed. P.L. 96–56 takes the form, in Section 1, of an amendment to § 17(a) of the Bankruptcy Act, incorporating into the Act the language of the repealed § 1087–3. Section 2 of P.L. 96–56 reads:

Sec. 2 The amendments made by section 1 shall apply with respect to any proceeding commenced under the Bankruptcy Act during the period beginning on the date of enactment of this Act and ending October 1, 1979.

Combining the effect of all of the above-quoted statutory language, one concludes that the Bankruptcy Act was repealed in its entirety upon October 1, 1979, but that it remains in force and effect for all cases commenced prior to that date. It is also evident that 20 U.S.C. § 1087–3 was repealed effective November 6, 1978. Moreover, it would seem that Congress, in enacting P.L. 96–56, recognized the existence of a gap in coverage of the exception to discharge of student loans in the BRA, and passed legislation that narrowed the gap. For any case, matter, or proceeding commenced between November 6, 1978 and August 14, 1979 *wherein a discharge was granted* before August 14, there was truly no law barring discharge of student loans. For proceedings commenced before August 14, 1979, wherein a discharge had not been granted by October 1, 1979, the case is otherwise. It is true that no law applicable to pre-August 14 bankruptcies is applicable in such cases under P.L. 96–56, for that statute is limited by its terms to bankruptcies commencing in the period August 14, 1979 to October 1, 1979. It is also true that no law is applicable under § 523(a)(8) of the BRA, for that statute applies under the terms of § 402(a) only to bankruptcies commenced after October 1, 1979. However, in any case commenced under the Bankruptcy Act and pending on October 1, 1979, § 403(a) does specify the law which shall

entry of a given order of discharge". The effect of this point of law is moot in the instant case, where neither discharge nor hearing on

dischargeability occurred prior to the effective date of § 403(a) of the BRA.

apply. § 403(a) became effective under the terms of § 402(a) on October 1, 1979, and, thus, applies to cases pending, as was the instant case, on that date. By the terms of § 403(a), cases such as the one before us "shall be conducted and determined under [the Bankruptcy] Act as if this Act [the Bankruptcy Reform Act] had not been enacted." The only way to "conduct, determine and govern" a case in bankruptcy as if the BRA "had not been enacted" is to deem the situation to be as it was on *November 5, 1978*, the day before enactment. On that date, the BRA had not only not repealed the Bankruptcy Act, it had not, by the terms of § 317, repealed § 1087–3. Thus, this Court holds that the savings provision, § 403(a) of the BRA, effective October 1, 1979, provides that the law governing exceptions to discharge which shall apply to discharges granted on and after that date shall be 20 U.S.C. § 1087–3 as though it [§ 1087–3] had never been repealed. Such a holding is consistent with previous decisions of the bankruptcy courts in this district. The close analysis and facial construction of § 403(a) by Judge Travethan in *Matthews* made the importance of the October 1, 1979 effective date of that provision pivotal, and this Court concurred in *Adams.*

From all that has been said, it is, therefore,

ORDERED that the motion to strike the complaint be denied, and the matter will be set for hearing to decide the other issues raised by the answer, including the issue of undue hardship.