**In the Matter of Joseph V. JAMES and Christine R. James a/k/a Christine F. James, Bankrupts.**

**PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, Plaintiff,**

v.

**Joseph V. JAMES and Christine R. James a/k/a Christine F. James, Defendants.**

**Bankruptcy Nos. 78–228 Erie, 78–229 Erie.**

United States Bankruptcy Court, W. D. Pennsylvania.

April 7, 1980.

Smith B. Gephart, Jane G. Penny, Killian & Gephart, Harrisburg, Pa., for plaintiffs.

Randy L. Shapira, Erie, Pa., for defendants.

### MEMORANDUM AND ORDER ON COMPLAINTS TO DETERMINE DISCHARGEABILITY

WM. B. WASHABAUGH, Bankruptcy Judge.

The plaintiff filed complaints against the within captioned husband and wife bankrupts to determine the dischargeability of their obligations to it under their separate loans it guaranteed to enable them to attend the Edinboro State College under the provisions of 20 U.S.C. § 1087–3(a) which provides:

"(a) A debt which is a loan insured or guaranteed under the authority of this part may be released by a discharge in bankruptcy under the Bankruptcy Act only if such discharge is granted after the five-year period (exclusive of any applicable suspension of the repayment period) beginning on the date of commencement of the repayment period of such loan, except that prior to the expiration of that five-year period, such loan may be released only if the court in which the proceeding is pending determines that

payment from future income or other wealth will impose an undue hardship on the debtor or his dependents."

■ The action on the husband's loan was discontinued because his petition in bankruptcy was filed more than five years after the due date of the first repayment instalment provided for in his loan agreement. The questions in the wife's action in which her bankruptcy petition was filed August 25, 1978 before the signing by the President of the new Bankruptcy Code P.L. 95–598 November 6, 1978 which purported to repeal 20 U.S.C. § 1087–3(a) as of the date of said Code's enactment in § 317 thereof and to simultaneously re-enact it as of its effective date of October 1, 1979 in § 523(a)(8) (see also § 402[a] and [d]) are whether 20 U.S.C. § 1087–3(a) was in effect on the controlling date in respect to her bankruptcy case or whether it was then repealed, and whether, if the legislation was then in effect, her obligation should be held dischargeable under the undue hardship provisions thereof.[1]

The repeal of 20 U.S.C. § 1087–3(a) quoted supra by § 317 of the Bankruptcy Reform Act of 1978 and its simultaneous re-enactment as of the later effective date of the Act in § 523(a)(8) thereof is one of the hardest to understand of the many irreconcilable inconsistencies that found their way into that in many respects noteworthy legislation through the last minute compromises negotiated between the staffs of the House and Senate Judiciary Committees during the closing hours of the 95th Congress to resolve the differences between the separate versions thereof initially adopted in the two Houses. The hiatus was compounded by the provisions of the Technical Amendments Act P.L. 96–56 signed by the President August 14, 1979 which, like the above referred to repealing provisions of § 317 of the Code, stated the Act should take effect on the date of its enactment,

not retroactively to the enactment of the Code November 6, 1978, and do not purport to reinstate 20 U.S.C. § 1087–3(a) between November 6, 1978 and the date of the enactment of the Technical Amendments Act August 14, 1979. Query: Were the provisions of 20 U.S.C. § 1087–3(a) empowering Courts of Bankruptcy to deny the dischargeability of student loan agreements in situations other than those of undue hardship effective in respect to cases filed between the dates of the enactment of the Code November 6, 1978 and the Technical Amendments Act August 14, 1979 and before that period? Were they applicable to cases in which discharges were granted before or during said period? In which complaints to determine dischargeability were filed or orders determining the controversy handed down before or during said period?

■ The bankruptcy petitions were filed August 25, 1978 before the repeal of 20 U.S.C. § 1087–3(a) became effective by the enactment of the Bankruptcy Reform Act November 6, 1978 and before the effective dates of the Technical Amendments Act August 14, 1979 and said Bankruptcy Reform Act of October 1, 1979. We think the true rule is that the state of the law as of the date of the filing of the petition when the rights of the debtor and creditors became fixed is the controlling date, and as the instant cases were filed August 25, 1978 before P.L. 95–598 was signed by the President, 20 U.S.C. § 1087–3(a) was in effect in respect thereto: *United States v. Carpenter*, 5 BCD 577, (D.Colo.1979) (Keller, J.); *Massachusetts Higher Assistance Corp. v. Sawaya*, 2 B.R. 37, 5 BCD 1072 (Bkrtcy.D. Mass.1979) (Gabriel, J.) and *Wisconsin Higher Education Aids Board v. Brown*, 4 BCD 207 (E.D.Wis.1978) (Clevert, J.). As said by Glen E. Keller, Jr., Bankruptcy Judge of the District of Colorado in *United States v. Carpenter, supra* :

The filing of a petition in bankruptcy operates as an application for a discharge

1. The plaintiff's argument that the husband's liability under his agreement guaranteeing payment of his wife's obligation survives his discharge in bankruptcy cannot be given effect as the two obligations are separate, not joint, and the claim based on the husband's liability under

his suretyship agreement was a contingent provable claim within the meaning of 11 U.S.C. § 103a(8) on the date of the bankruptcies: 3A Collier on Bankruptcy (14th Ed.) ¶ 63.19 at page 1876 and cases cited.

. . . . That discharge is of course, retroactive to the date of the filing of the petition and discharges the bankrupt from all "dischargeable debts." Those dischargeable debts were fixed as of the date of the filing of the petition in bankruptcy. Of course, declarations of the effect of the discharge occur thereafter, but the critical date is the date of the filing of the petition applying for a discharge. If then the rights of the parties were vested, the subsequent repealer does not operate to change . . . the relationship between the parties.

See also § 403(a) of the Bankruptcy Code which provides that cases filed under the earlier Bankruptcy Act of 1898 and amendments thereto shall be conducted and determined under that legislation as if the Bankruptcy Reform Act had not been enacted and that the substantive rights of the parties should continue to be determined by such earlier law.[2]

The courts have differed in their treatment of the dates and circumstances under which the student loan dischargeability provision of 20 U.S.C. § 1087–3(a) will be held operative or in abeyance as a result of the Congressionally created state of confusion hereinabove described and range from the opinions of Judges Gabriel of Massachusetts and Perlman of Ohio in *Massachusetts Higher Education Assistance Corporation v. Sawaya*, 2 B.R. 37, 5 BCD 1072 (Bkrtcy.D. Mass.1975) and *State of Ohio v. Joseph King, Jr.*, 5 BCD 417 (S.D.Ohio 1979) to the effect that the repeal of the legislation as of the enactment date of the Code in § 317 was intentional even though inadvert and that the subject obligations cannot be held non-dischargeable in cases filed between November 6, 1978 and August 14, 1979 to the conclusion of Judge Ryan of the Southern District of New York in *New York Higher Education Service Corporation v. Henry*, 1 B.R. 295, 5 BCD 1014 (S.D.N.Y. 1979) that the purported repeal of the legislation in § 317 is contrary to the overriding intention of Congress as evidenced by its re-enactment thereof in a later section of

the same legislation § 523(a)(8), and the sections purporting to repeal the provisions were therefore ineffective [see also *New York Higher Education Corporation v. Kohn*, 5 BCD 419 (S.D.N.Y.1979) (Babitt, J.); *Wisconsin Higher Education Aids Board v. Bedson*, 4 BCD 1191 (D.Nev.1979) (Goldwater, J.) and other cases in some of which the conclusion arrived at is based partially on the savings provisions of § 403 even though the effective date of that section was postponed to October 1, 1979 when all but a few sections of the Code went into effect.] In addition, the decisions differ in respect to the date as to which it must be determined whether the legislation was in effect or repealed, some like those above cited in support of the conclusion herein arrived at holding that the filing date of the bankruptcy petition is the controlling date, while others hold it is the date of the granting of the discharge [*Connecticut Student Loan Foundation v. Piccione*, 1 B.R. 364, 5 BCD 1076 (D.Conn.1979) (Krechevsky, J.) and *New York State Higher Education Services Corp. v. Amadori et al.*, 5 BCD 186 (W.D.N.Y.1979) (McGuire, J.)] and still others, the date of the court's order resolving the controversy: *Pennsylvania Higher Education Assistance Agency v. Johnson*, 5 BCD 532 (E.D.Pa.1979) (Twardowski, J.); *Pennsylvania Higher Education Assistance Agency v. Payton*, 4 BCD 1126 (E.D.Pa. 1979) (Goldhaber, J.); *Wisconsin Higher Education Aids Board v. Utterback*, 5 BCD 1046, 1 B.R. 199 (N.D.Tex.1979) (Flowers, J.); *Coordinating Board, Texas College and University Systems v. Espronceda*, 5 BCD 267 (S.D.Tex.1979) (Blinn, J.) and *New York State Higher Education Services Corporation v. Christopher, et al*, 5 BCD 214 (W.D. N.Y.1979) (Hayes, J.).

■ Having concluded that the legislation empowering us to determine student loans non-dischargeable when the first repayment instalment becomes due within five years prior to a bankruptcy filing is applicable to the controversy and has not been repealed in relation thereto, we address the issue of whether excepting the

---

2. Unfortunately the effective date of this section was not excepted from the postponed effective date of October 1, 1979 by § 402 of the Code.

plaintiff's obligation from the operation of the wife-bankrupt's discharge would cause her undue hardship within the meaning of that term in the subject legislation.[3]

■ She married the co-defendant, James Vincent James, and became the mother of their child after obtaining her degree in elementary education in May of 1973 and employment for a time as a substitute teacher on the strength thereof. Her husband was employed as a clerk by the Pennsylvania Liquor Control Board at a salary of $125.00 per week net pay and had additional employment as a real estate salesman in which he earned $4,400.00 income in the calendar year 1978. She is thus living in comfortable circumstances even though her livelihood is being provided by her husband and it is uncertain whether she will acquire assets in her own right that could be levied on to collect a judgment for the obligation that enabled her to obtain the degree through which she secured gainful employment and could presumably again obtain the same if she should become in need. We do not think that under these circumstances the entry of an order excepting the obligation from the operation of her discharge would cause her undue hardship within the meaning of the statute.

IT IS ORDERED, ADJUDGED and DECREED for the foregoing reasons that the obligation of the defendant, Christine R. James a/k/a Christine F. James, to the Pennsylvania Higher Education Assistance Agency under the obligation declared upon in the within proceeding be, and the same hereby is, determined to be non-dischargeable and unaffected by her discharge in the within bankruptcy case; that judgment shall be entered in favor of the plaintiff, the Pennsylvania Higher Education Assistance Agency and against the defendant in the amount of the balance of said indebtedness on the filing of an appropriate motion therefor. The obligation of the defendant,

Joseph V. James, under his agreement guaranteeing payment of the wife-bankrupt's loans is held discharged.

---

3. The bankruptcy petition was filed August 25, 1978 within five years of the due date of the first instalment under the wife's loan agreement viz. nine months after the date of her graduation February, 1974. Her argument that the five-year period after which the debt be-

comes mandatorily dischargeable begins with the date of her graduation rather than nine months after such date is untenable under the express words of the agreement as authorized by the suspension provisions of 20 U.S.C. § 1087–3(a).