**In re Elliot Eric PACKER, Debtor.**

**MASSACHUSETTS HIGHER EDUCATION ASSISTANCE CORPORATION, Plaintiff,**

**v.**

**Elliot Eric PACKER, Defendant.**

**Bankruptcy No. 79–0616–G.**

United States Bankruptcy Court, D. Massachusetts.

March 24, 1981.

Henry L. McNulty, Boston, Mass., for plaintiff.

Marvin Silver, Worcester, Mass., for defendant.

MEMORANDUM AND ORDER

PAUL W. GLENNON, Bankruptcy Judge.

On April 3, 1979, the debtor filed a petition in bankruptcy. On June 12, 1979, the

plaintiff, herein filed a complaint praying that the debt owed by the debtor to the plaintiff be excepted from discharge by reason that these are student loans which may be properly excepted from discharge under Section 523(a)(8) of the Bankruptcy Code. 11 U.S.C. § 101 et seq., as amended October 1, 1979. Before turning to the merits of this case, I should like to clarify the applicable law on this point.

This bankruptcy proceeding was commenced during an 11 month period after the enactment of the Bankruptcy Reform Act of 1978 (the "Code"), but prior to its effective date of implementation. The Code was signed into law on November 6, 1978, but its effective date was delayed until October 1, 1979 in order that the federal bankruptcy courts could make proper adjustments for the new expanded jurisdiction they were to exercise under the Code. From November 6, 1978 to October 1, 1979, therefore, the old Bankruptcy Act of 1898 (the "Act") was still the applicable law to cases filed before October 1st. Further, once a case was commenced under the Act, that law was to remain controlling in the case until it was closed, as if the Code had not been enacted. Section 403(a) of Title IV of the Bankruptcy Reform Act of 1978. This clause is commonly referred to as the savings provision of the Code. Therefore, the Act is applicable to the case at bar.

The problem in this case stems from Section 317 of Title III of the Reform Act of 1978 ("Section 317"), which effectively repealed as of November 6, 1978 Section 439A of Part B of Title IV of the Higher Education Act of 1965. ("Section 439A"). Originally, the Act contemplated that student loans would be dischargeable in bankruptcy. Because of abuses in the system, Section 439A was enacted to except from discharge all federally guaranteed or insured loans for higher education, unless it was found that to do so would be an undue hardship on the debtor. See, 20 U.S.C. § 1087–3, repealed Nov. 6, 1978. Thus, without Section 439A, there is no exception for the discharge of student loans. Since, Section 439A was repealed by Section 317, effective November 6, 1978, and because Section 523(a)(8) of the

Code, which is substantially the same as Section 439A, did not become operative until October 1, 1979, there was an 11 month "gap" period where student loans seemingly could be discharged in bankruptcy. In fact, some courts did in fact so hold. See, for example, In re Sawaya, 2 B.R. 37, 5 B.C.D. 1072 (Bkrtcy.D.Mass.1979), decided by my colleague, Judge James Gabriel from this district.

It has become apparent, however, that the dischargeability of student loans was not intended by Congress in its passage of the New Code. In fact, the Code continues the policy of Section 439A by including Section 523(a)(8), with even broader applicability to all kinds of higher education loans which Section 439A did not cover. See, 11 U.S.C. § 523(a)(8). Further, when Congress realized their oversight had led to a "gap" in the law, they passed corrective legislation to shorten the "gap". See, Public Law No. 96–56, 93 Stat. 387 (Aug. 14, 1979). Unfortunately, that legislation was enacted after the filing of this complaint, and is not applicable here. But, it has been used together with my observations above, by many courts to conclude that the clear intent of Congress was not to declare student loans dischargeable in bankruptcy, but that apparently there was a Congressional oversight in that regard. In re Edson, 4 B.C.D. 1191 (D.Nev.1979); In re Henry, 1 B.R. 295, 5 B.C.D. 1014 (Bkrtcy.S.D.N.Y. 1979); In re Piccione, 1 B.R. 364, 5 B.C.D. 1076 (Bkrtcy.D.Conn.1979); In re Adamo, 619 F.2d 216 (2d Cir. 1980); Wisconsin Higher Educational Aids Board v. Lipke, 630 F.2d 1225, 6 B.C.D. 1023 (7th Cir. 1980). These cases, then, have used various legal theories to conclude that the policy of excepting student loans from discharge, unless undue hardship is proved, should be continued throughout this so-called "gap" period. One of those theories was the one the debtor espoused in his earlier motion for summary judgment. I denied that motion on the basis that, upon the theory of In re Carter, 32 F.2d 186 (2nd Cir. 1929), which was that the law to be applied was that which was in force at the time of decision,

operated to make Section 523(a)(8) of the Code applicable, and on that basis the debtor would fail. At that time, I was concerned that the matter should go to trial on the question of undue hardship, for if the debtor made out such a case, he would succeed no matter what law the court found applicable. However, I did not then, and do not feel now, that the principle of *Carter* is controlling. The law to be applied is the law which was in effect at the time of the filing of the petition, as required by the savings provisions of the Reform Act. I merely used *Carter* to show that upon his own theory of law, the debtor was not entitled to summary judgment.

 Therefore, having determined what law is to be applied, the question now arises whether the court is going to look to the literal language of Section 317 and conclude that Section 439A was effectively repealed, or if in fact, it will look behind the words to give effect to the actual intent of Congress. After reviewing the multitude of cases reported on this question, and in accordance with the two highest courts which have ruled on the matter, I conclude that the policy of excepting higher education loans from discharge should be continued and applied to those proceedings commenced between November 6, 1978 and October 1, 1979, like the case at bar. See, *In re Adamo*, supra (2d Circuit) and *Wisconsin Higher Education Aids Board v. Lipke*, supra (7th Cir.). In so doing, I am merely continuing the force and effect of Section 439A up to October 1, 1979. Although many theories have been used to reach this result, I don't feel it necessary to pick one in particular as controlling. Upon any theory, the equitable considerations behind the bankruptcy laws and the equitable powers of a bankruptcy court would seem to mandate such a conclusion, and I so find. Therefore, following that policy and applying it to the case at bar, it is clear that the debt owed to the plaintiff may be excepted from the debtor's discharge, unless this court determines that payment from future income or other wealth will impose an undue hardship. 20 U.S.C. § 1087–3, as enacted prior to repeal. After hearing and upon

consideration of all the evidence presented I am of the opinion that the debtor's case is not one of those falling within the "undue hardship" exception.

The testimony of the debtor and the evidence introduced shows that the debtor borrowed from the plaintiff $13,283.00 as loans for his higher education. The debtor attended Boston University for 4 years and received a B.A. in Religion. He then pursued 1 year of post-graduate study in psychology at the University of Massachusetts, and finally completed his education with two years of study at the University of Louisville, where he received a Master's Degree in social work in May of 1978. Since his graduation from Louisville, the debtor has worked at three different jobs, all related to the social services field, at incomes ranging from $11,500 per year to $14,200 per year. His current place of employment is a small, private settlement house funded by the United Way, which earns him $12,500 per year salary. After deductions for taxes, the debtor claims his net income to be $746.56 per month. The debtor is single, has no physical disabilities, is currently employed, has no dependents or extraordinary expenses, and has every reasonable expectation to continue working in the field in which he now finds himself. The testimony of the debtor at trial indicates a relatively moderate expense budget, which leaves no more than a few dollars per month available to pay off his indebtedness. It should be noted that the type of loan herein referred to generally carries a 10 year term in which to repay. The debtor claims that because of all of his expenses he is unable to pay off his loans at this time, nor is he likely to be in a position to do so in the future. I find this claim to be untenable under the circumstances.

The courts which have ruled on the question of undue hardship have evolved certain standards or tests by which to judge the burden which might be placed on a debtor if his/her student loans are found to be dischargeable. Generally, undue hardship has only been found where exigent circumstances exist which impair the debtor's abil-

ity to repay the loans, such as where the debtor has recently been through a divorce, receives no income from her ex-husband, and supports two children, one of whom required extensive medical treatment, *In re MacPherson*, 4 B.C.D. 950 (W.D.Wis.1978); or, where the debtor and her husband lived on a net monthly income of $560, and had incurred a $4,000 medical debt because of severe medical problems encountered by the couple's young baby. *In re Bagley*, 4 B.R. 248, 6 B.C.D. 404 (Bkrtcy.D.Ariz.1980). These are the types of extreme hardship to which the exception to Section 439A of the Higher Education Act was meant to apply. It was not intended for the situation in the case at bar.

This debtor incurred substantial liabilities in furtherance of his education. As a result, he has obtained a highly commendable, and potentially lucrative, Master's Degree in social work. It does not matter that at this time his job in that field does not pay him all that he might expect. A salary of $12,500 per year is certainly adequate to maintain a minimum standard of living, and still repay school loans. I am unpersuaded by the debtor's testimony that his expenses have so burdened him as to leave him no funds available to repay his school loans. A monthly rental expense of $330 would appear to be excessive in view of the fact that the debtor knew that his school loans would mature within 9 months of his graduation. As imposing as the current housing market might be, I certainly feel that less expensive accommodations could be found without the debtor having to live in squalor. Further, $30 per month in long-distance toll calls on his telephone does not persuade me that this debtor has done everything within his means to make good upon his promise to repay these loans. Finally, the debtor incurs expenses which he claims are job-related by commuting to and from work every day in a car and by paying $60 per month for psychotherapy which he uses as a kind of "refresher" course to keep up on the latest techniques. These expenses cannot be justified in view of the fact that the debtor lives and works close to a rapid transit line and has no personal or individu-al need for psychotherapy, other than as a job-related bonus. This is not to say that either of these expenses are excessive, but merely that they may be unnecessary, particularly in view of the fact that the debtor has known since he took out his first loan 7 years ago that he was going to be responsible for repaying them upon completion of his studies. In effect, the debtor has "priced himself out of the market". His circumstances are not unusual or extreme by any definition of those words. Although the debtor may never become rich, whatever opportunities he now has, or will have in the future, are as a result of his educational background. To ask the debtor to pay some minimal monthly amount in an effort to reduce his loan balance may require some prudent budgeting on his part, but certainly will not impose any kind of undue hardship, as that term is understood in the bankruptcy courts. See, for example, *In re Kirch*, 4 B.C.D. 680 (S.D.Ohio 1978) and *In re Kammerud*, 6 B.C.D. 370 (S.D.Ohio 1978).

Therefore, for the foregoing reasons, I am going to order that the debt owing to the plaintiff by Elliot Eric Parker be, and hereby is, excepted from discharge.