**In the Matter of Keith FLAMINI, Debtor.**

**Bankruptcy No. 81–1879–B.**

United States Bankruptcy Court, E. D. Michigan, S. D.

April 1, 1982.

Professional Legal Centers, Professional Corp. by Patrick Conway, Detroit, Mich., for debtor.

Harry J. Fleming, Sp. Asst. Pros. Atty., St. Claire Shores, Mich., Wayne County Friend of the Court, for defendant.

## OPINION

GEORGE BRODY, Bankruptcy Judge.

This action involves the question of whether the August 13, 1981 amendment to section 523(a)(5) of the Bankruptcy Code applies to cases filed before August 13, 1981.

Keith Flamini (debtor) filed a voluntary Chapter 7 bankruptcy petition on June 29, 1981, and was granted a discharge on August 27, 1981. The debtor's spouse had obtained a judgment of divorce on January 14, 1981, and pursuant to that judgment the debtor was obligated to make support payments to his spouse. The debtor failed to make the payments, and his wife applied for support payments from the State of Michigan from the Aid to Families with Dependent Children fund (AFDC). Section 402(a)(26) of the Social Security Act requires that as a condition of eligibility for AFDC payments, the claim of the wife for the payments that the husband is required to make be assigned to the State. The debtor's spouse applied for AFDC benefits and accordingly assigned her claims against the debtor to the state. In his petition, the debtor listed a support obligation to the Friend of the Court in the amount of $6,004.[1] This debt represents funds paid by the State of Michigan Department of Social

Services to the debtor's former spouse for support payments. On or about November 10, 1981, the debtor was ordered by the Wayne County Friend of the Court's office to show cause in State District Court as to why he should not be held in contempt for the failure to pay the support obligation he had incurred prior to the filing of the petition in bankruptcy.[2] Upon application by the debtor, this court issued a temporary restraining order. The Friend of the Court moved to dismiss, contending that the debt which it was attempting to collect was nondischargeable and, therefore, it could pursue collection of the debt.

Whether the debt is or is not dischargeable depends upon whether the law to be applied is the law in effect on the date that the debtor filed his petition in bankruptcy or the law in effect as of the date that the dischargeability case is decided. Section 523(a)(5) of the Bankruptcy Code as originally enacted provided as follows:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise; or—

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]

On August 13, 1981, section 523(a)(5) was amended by section 2334 of the Omnibus Budget Reconciliation Act of 1981, P.L. 97–

---

1. Under Michigan law, M.S.A. § 25.171 [M.C. L.A. § 552.251 et seq.], a court-appointed officer entitled the Friend of the Court is empowered to account for and collect child support awards granted incident to divorce decrees.

2. The State also alleges that a portion of the arrearages pursued in the State District Court

action represents postpetition debt. These amounts are not dischargeable. What portion of the debt, if any, accrued postpetition is a question of fact which the court will determine, if necessary, upon submission of additional evidence.

35. The amendment reads in pertinent part as follows:

> (b) Section 523(a)(5)(A) of title 11, United States Code, is amended by inserting before the semicolon the following: "(other than debts assigned pursuant to section 402(a)(26) of the Social Security Act)".
>
> (c) The amendments made by this section shall become effective on the date of the enactment of this Act.

Thus, on the date that the debtor filed his petition in bankruptcy, his obligation to the State was dischargeable; but as of the date of the hearing on the issuance of the restraining order, the debt was not dischargeable. The State contends that since there has been no court determination of the dischargeability status of the support obligation, the debt is now non-dischargeable by virtue of the August 13th amendment to Section 523(a)(5), and it may, therefore, proceed to attempt to collect the debt.

Except for actions involving student loans,[3] the cases have consistently held that the law to be applied in a non-dischargeability action is the law in effect at the time that the judge decides the case. *In re Spell*, 650 F.2d 375 (2d Cir. 1981); *In re Carter*, 32 F.2d 186 (2d Cir. 1929); *Royal Indemnity Co. v. Cooper*, 26 F.2d 585 (4th Cir. 1928); *Matter of Sloss*, 192 F.Supp. 136 (S.D.N.Y. 1961); *In re Johnson*, 5 B.C.D. 532 (E.D.Pa. B.J.1979); *In re Leach*, 15 B.R. 1005, 8 B.C.D. 587 (Bkrtcy.D.Conn.B.J.1981). However, these holdings ignore traditional principles of statutory construction and do violence to the concepts of discharge and dischargeability.

■ It has been stated that "[t]here are few principles of our law more ancient, and none more respected, than the canon which holds that laws are enacted for the future." *South East Chicago Comm'n v. Dept. of H.U.D.*, 488 F.2d 1119, 1122 (7th Cir. 1973). A primary rule of statutory construction is "that legislation must be considered as addressed to the future, not to the past ... [and] a retrospective operation will not be given to a statute which interferes with antecedent rights ... unless such be the 'unequivocal and inflexible import of the terms, and the manifest intention of the legislature'." *Greene v. United States*, 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964), citing *Union Pacific Ry. Co. v. Laramie Stockyards Co.*, 231 U.S. 190, 34 S.Ct. 101, 58 L.Ed. 179 (1913). This rule commands universal acceptance. *United States v. Estate of Donnelly*, 397 U.S. 286, 90 S.Ct. 1033, 25 L.Ed.2d 312 (1970); *Puget Sound Power & Light Co. v. Federal Power Comm'n*, 557 F.2d 1311 (9th Cir. 1977); *N.L.R.B. v. St. Luke's Hosp. Center*, 551 F.2d 476 (2d Cir. 1976); *United States v. Richardson*, 512 F.2d 105 (3d Cir. 1975); *Edgar v. Fred Jones Lincoln-Mercury, Inc.*, 524 F.2d 162 (10th Cir. 1975); *Place v. Weinberger*, 497 F.2d 412 (6th Cir. 1974); *DeRodulfa v. United States*, 461 F.2d 1240 (D.C.Cir.1972); *Taliaferro v. Stafseth*, 455 F.2d 207 (6th Cir. 1972); *Weldon v. Bd. of Ed. of City of Detroit*, 403 F.Supp. 436 (E.D.Mich.1975); *Placek v. Sterling Heights*, 405 Mich. 638, 275 N.W.2d 511 (1979); *Detroit Trust Co. v. City of Detroit*, 269 Mich. 81, 256 N.W. 811 (1934). This canon, moreover, "responds to a special call when the legislation under consideration is antithetical to previously arising economic expectancies." *DeRodulfa v. United States, supra*, at 1247. The fact that the change in the law was made by amendment makes no difference in the application of this basic rule of construction. "[A]mendatory statutes generally operate prospectively only absent a strong indication of legislative intent to the contrary, ... especially when they disturb 'matured' or 'unconditional' rights or impose 'unanticipated obligations.'" *Hosp. Emp. Labor Program, Chicago v. Ridgeway Hosp.*, 570 F.2d 167, 170 (7th Cir. 1978). *Accord, In re Reilly*, 442

---

3. *In re Broughton*, 6 B.R. 1011 (D.C.N.D.Ga. 1980); *In re Packer*, 9 B.R. 884 (Bkrtcy.D.Mass. B.J.1981); *Matter of Williams*, 9 B.R. 1004 (Bkrtcy.E.D.Va.B.J.1981); *Matter of James*, 4 B.R. 115 (Bkrtcy.W.D.Pa.B.J.1980); *United States v. Carpenter*, 5 B.C.D. 577 (D.Col.B.J. 1979); *In re Sawaya*, 2 B.R. 37 (Bkrtcy.D.Mass. B.J.1979); *Wisconsin Higher Ed. Aids Bd. v. Brown*, 4 B.C.D. 207 (E.D.Wis.B.J.1978).

**306**

F.2d 26 (7th Cir. 1971); *Koster v. Warren*, 297 F.2d 418 (9th Cir. 1961); *Addison v. Bulk Food Carriers, Inc.*, 363 F.Supp. 1016 (D.Mass.1973), aff'd 489 F.2d 1041 (1st Cir. 1974); *In re Semel & Co.*, 285 F.Supp. 536 (D.N.J.1968). This rule holds true particularly where, as here, the amendments "reflect a change in knowledge or societal attitudes." *Marshall v. Baltimore & O. Ry.*, 461 F.Supp. 362, 382 (D.Md.1978).[4]

■ The presumption against retroactivity is overcome where the amendment can be classified as "curative." *Bell v. Ithsmian Lines, Inc.*, 363 F.Supp. 156 (M.D.Fla.1973). "Curative" legislation, however, does not include any law which happens to have as its purpose the rectification of a previously existing inequity. Rather, it is limited to laws which are intended to permit the accomplishment of a previously enacted design, which has failed to achieve its expected legal consequences by reason of some statutory inadequacy or irregularity. *Silverlight v. Huggins*, 347 F.Supp. 895, 898 (D.V.I.1972). Prior to 1975, it was disputed whether an assigned support debt could be excepted from discharge under section 17a(7). Some courts held that a State could not bootstrap itself into protected status. *In re Kiluk*, CCH Bankr.L.Rep. ¶ 65,681 (D.Conn.1975); *In re Shreve*, CCH Bankr.L. Rep. ¶ 65,757 (W.D.Mich.B.J.1975); *In re Ashby*, CCH Bankr.L.Rep. ¶ 65,100 (W.D. Mich.B.J.1973); *Hilliard v. DeCiuceis*, 202 Misc. 197, 115 N.Y.S.2d 5 (Sup.Ct.1952); *Lasher v. McIntyre*, 62 Misc.2d 662, 309 N.Y.S.2d 960 (Fam.Ct.1970). Others found non-dischargeability based on the nature of the underlying debt. *In re Williams*, 529 F.2d 1264, 7 C.B.C. 274 (9th Cir. 1976); *In re Rivard*, CCH Bankr.L.Rep. ¶ 65,647 (D.Mass.1974). Congress resolved this controversy by amending the Social Security Act to provide that a support debt assigned to a State as a condition of AFDC eligibility was not dischargeable in bankruptcy. P.L.

93–647, 88 Stat. 2337, 43 U.S.C. § 656(b) (1974). Deciding that the result of this legislation was too harsh, Congress explicitly repealed section 656(b) in section 328 of the Bankruptcy Reform Act of 1978, P.L. 95–598, and drafted section 523(a)(5) to apply only to liabilities owed directly to a spouse. *In re Spell, supra*, at 379. States faced with a tremendous loss of revenue exerted pressure on Congress to reinstate what had been the law prior to November 6, 1978. The amendment of August 13, 1981 reflects a change in policy. It does not accomplish a "previously enacted design which has failed to achieve its expected legal consequences." Section 2334 of the Omnibus Budget Reconciliation Act which amended section 523(a)(5) was not curative legislation.

■ It must be presumed that a decision to begin a bankruptcy proceeding is not made lightly. The decision to file a petition is reached by a debtor after consultation with his attorney as to the advantages and disadvantages of such action. The single most important factor in this decision is the scope of the discharge: which of the debtor's obligations will be dischargeable and which will have to be paid. The debtor files a bankruptcy petition in reliance upon existing law. The right to a discharge and the right of a discharge of any individual debt are important substantive rights conferred by the Bankruptcy Code. Section 523(a)(5), as originally enacted, conferred on debtors who filed petitions in bankruptcy the right to discharge a designated class of obligations. Whether as a matter of policy the right to discharge this class of obligations should have been bestowed is not in issue. What is relevant is that this significant right no longer exists by virtue of the amendment of August 13, 1981. Absent any express indication that Congress intended the August 13th amendment to apply retroactively, the reasonable expecta-

---

**4.** The Senate Report accompanying the Omnibus Budget Reconciliation Act discloses that § 523(a)(5) was amended because "[t]he committee believes that a parent's obligation to support his child is not one that should be allowed to be discharged by filing for bankruptcy." S.Rep.No.97–139, 97th Cong., 1st Sess. 523 (1981), U.S.Code Cong. & Admin.News 1981, pp. 396, 790.

ions of debtors who acted in reliance on xisting legislation should not be frustrat-d. For the foregoing reasons, it is the pinion of this court that the August 13th mendment should be given prospective ap-lication only.

There are also disturbing practical com-lications that would flow from the result rged by the State. Except for debts non-dischargeable by virtue of paragraphs (2), (4), and (6) of section 523(a), there is no time limit within which a complaint to de-termine dischargeability of a debt may be filed.[5] *Bd. of Trustees of Univ. of Alabama v. Wright,* 7 B.R. 197, 7 B.C.D. 114 (Bkrtcy. N.D.Ala.B.J.1980). Section 523(a)(5) as originally enacted and as amended is in effect a self-executing provision.[6] Under section 523(a)(5) as originally enacted, the assigned support payments were discharge-able. In fact, this is probably the reason why the State took no action prior to the August 13th amendment with respect to determining the dischargeability status of the debt. It would have been futile for the State to institute an action before the amendment. To hold that 523(a)(5) as amended applies in all cases where a prior determination of dischargeability had not been made with respect to assigned support payments would make it possible for the State to go back through its files and bring countless actions which had been written off and completely negate the effect of section 523(a)(5) as originally enacted. Un-doubtedly, Congress was free to make the policy change embodied in the Omnibus Budget Reconciliation Act. However, "we are not to suppose that it meant to take back what once it had given unless there is no escape from the conclusion." *In re John G. Gasteiger & Co.,* 25 F.2d 642, 643 (1928).

Finally, this court is not persuaded by the authorities cited by the State for an addi-tional reason. A review of the cases which hold that the law in effect at the time that a Judge decides a dischargeability question controls rather than the date of the filing of the petition in bankruptcy reveals that all of them, either directly or indirectly, rely on *In re Seaholm,* 136 F. 144 (1st Cir. 1905). *Seaholm* must be read in light of the law as it then existed. At the time that *Seaholm* was decided, the filing of a peti-tion in bankruptcy did not operate as an application for a discharge. The debtor had to file a separate application for a dis-charge. P.L. 171, 55th Cong. § 14(a) (July 1, 1898)[7] *Seaholm* decided that the law in effect when the bankruptcy petition was filed was not to be applied, but *Seaholm* did not decide that the law in effect when the Judge decides the dischargeability question was controlling. *Seaholm* held that the law to be applied was the law in effect when the debtor applied for a discharge for the reason that when the debtor applied for a discharge, "he invoked the law as it then was." *Id.* at 147. Under the Code, the filing of the bankruptcy petition acts as an application for discharge. *Seaholm,* there-fore, actually supports the argument ad-vanced by the debtor rather than by the State.

The traditional purpose of the bank-ruptcy laws has always been to provide "reasonably expeditious rehabilitation of fi-nancially distressed debtors with a conse-quent distribution to creditors who have

5. See section 523(c) and Interim Bankruptcy Rule 4003.

6. In fact, the legislative history to section 523(a) dealing with student loans confirms this. The legislative history accompanying section 523(a)(8) states that

This provision is intended to be self-execu-ting and the lender or institution is not re-quired to file a complaint to determine the nondischargeability of any student loan. S.Rep.No. 95 989, 95th Cong., 2d Sess. 79 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5865.

This approach is particularly applicable with respect to the effect to be given to an assigned support claim. The claim is either assigned or not assigned. Prior to the August 13th amend-ment, if the claim was assigned, it was dis-chargeable; if it was not assigned, it was not dischargeable.

7. The filing of a bankruptcy petition did not operate as application for discharge until the Chandler Act was adopted in 1938. P.L. 696, 75th Cong. § 14(a) (June 22, 1938).

acted diligently." *Matter of Semel & Co., supra,* at 540. However, this goal cannot be achieved "without the added ingredients of 'certainty' and 'finality' ". *Id.* To accept the State's position and determine dischargeability without regard to the law in effect on the date of filing would belie the important goal of finality of judgment. "[W]e shall not have equal justice if the final outcome depends on the time it takes the courts to reach a final determination of what those rights are with the possibility of intervening legislation affecting such outcome." *In re Littell,* 6 B.R. 85, 88 (Bkrtcy. D.Ore.B.J.1980). Neither the case law nor accepted rules of statutory construction support such a result.

An appropriate order to be submitted.