619 F.2d 216
 1 Collier Bankr.Cas.2d 866, 6 Bankr.Ct.Dec. 313,
Bankr. L. Rep. P 67,412
 In re Paul R. ADAMO, Barbara Ann Barrington, Raymond A.
Brimacomb, Michael S. Dempsey, Paul M. Gagnon, Eloise Hymes,
Pamela R. Jurich, Leomia Linton, Kenneth W. Locey, Jr.,
Deborah Peters Mancuso, Diane K. Mayo, Denise K. Munnings,
Karen Nielsen, Chandos C. Williams, Joan L. Williams,
Raymond T. Wright, Jr., Marcia Lee Christopher, Phillip Lee
Norton, Donald J. Salamone, Karen Stanley, William M. Edwards.
NEW YORK STATE HIGHER EDUCATION SERVICES CORPORATION, Appellant,
v.
Paul R. ADAMO et al., Appellees.
 No. 813, Docket 79-5059.
 United States Court of Appeals,
Second Circuit.
 Submitted March 14, 1980.
Decided April 16, 1980.
 
 1
 Lawrence W. O'Toole, Albany, N. Y., for appellant.
 
 
 2
 Before LUMBARD and MANSFIELD, Circuit Judges, and BARTELS, District Judge.*
 
 BARTELS, District Judge:
 
 3
 This is an appeal from a judgment of the United States District Court for the Western District of New York, Burke, J., affirming the discharge by the Bankruptcy Court of certain student loan obligations in proceedings brought on by twenty-one voluntary petitions in bankruptcy.[1] The sole question for review is the effect of the repeal by Congress of Section 439A of the Higher Education Act of 1965, as amended, 20 U.S.C. § 1087-3, pertaining to dischargeability of student loans, on petitions in bankruptcy commenced but not disposed of prior to the date of such repeal.
 
 
 4
 The pertinent facts are undisputed. Each of the loans here involved is either owed to or guaranteed by appellant New York State Higher Education Services Corporation ("NYSHESC"), and each was reinsured to appellant by the United States Office of Education by agreements entered into pursuant to the Higher Education Act of 1965, as amended, 20 U.S.C. §§ 1071 et seq. At the time the twenty-one voluntary petitions in bankruptcy were filed, § 1087-3 of Title 20 provided, in part, as follows:
 
 
 5
 (a) A debt which is a loan insured or guaranteed under the authority of this part may be released by a discharge in bankruptcy under the Bankruptcy Act only if such discharge is granted after the five-year period . . . beginning on the date of commencement of the repayment period of such loan, except that prior to the expiration of that five-year period, such loan may be released only if the court in which the proceeding is pending determines that payment from future income or other wealth will impose an undue hardship on the debtor or his dependents.
 
 
 6
 (b) Subsection (a) of this section shall be effective with respect to any proceedings begun under the Bankruptcy Act on or after September 30, 1977.
 
 
 7
 This provision was subsequently repealed effective November 6, 1978, however, by Section 317 of the Bankruptcy Reform Act of 1978 ("BRA"), Pub.L.95-598,[2] and was replaced by an analogous section, 11 U.S.C. § 523(a)(8). Broader in scope than 20 U.S.C. § 1087-3, section 523(a)(8), as amended by Pub.L.96-56, provides:
 
 
 8
 (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt
 
 
 9
 (8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution of higher education, unless
 
 
 10
 (A) such loan first became due before five years . . . before the date of the filing of the petition; or
 
 
 11
 (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents; . . .
 
 
 12
 Under section 402(a) of the BRA, this replacement provision did not become effective until October 1, 1979, approximately eleven months after the effective date of the repeal of its predecessor, 20 U.S.C. § 1087-3.[3] According to appellant, this interruption in the rule of nondischargeability of student loans constitutes a loophole through which certain student loan debtors now attempt to escape their repayment obligations.
 
 
 13
 The Bankruptcy Court disposed of all of the twenty-one petitions by two identical memorandum decisions and orders dated March 16 and April 5, 1979, respectively, holding that because the petitions were considered and resolved after the repeal of 20 U.S.C. § 1087-3 but before the effective date of 11 U.S.C. § 523(a)(8), the Bankruptcy Court no longer had jurisdiction "to determine that the subject bankrupts are not entitled to a discharge, since the law which exists at the time of this decision has no provision for the denial of the discharge of student loans." Accordingly, Bankruptcy Judge Hayes ordered that the student loan debts in question be discharged. His decision was affirmed by the district court in a brief order on September 27, 1979, and this appeal followed.
 
 
 14
 The question presented by this appeal has been considered previously on numerous occasions by many different bankruptcy courts, and at least ten of these have concluded, along with Judge Hayes in this case, that discharge should be ordered. See In re Utterback; Wisconsin Higher Education Aids Board v. Utterback, 5 B.C.D. 1046 (N.D.Tex.1979); In re Sawaya; Massachusetts Higher Education Assistance Corporation v. Sawaya, 5 B.C.D. 1072 (D.Mass.1979); In re King, Jr.; State of Ohio v. King, Jr., 5 B.C.D. 417 (S.D.Ohio 1979); In re Johnson; Pennsylvania Higher Education Assistance Agency v. Johnson, 5 B.C.D. 532 (E.D.Pa.1979); In re Jones; University of Cincinnati v. Jones, No. B-1-1804 (S.D.Ohio 1979); In re Matthews; Matthews v. Connecticut Student Loan Foundation, (1979) Bankr.L.Rep. (C.C.H.) P 67,049 (D.Conn.1979); In re Adams; Connecticut Student Loan Foundation v. Adams, No. H-78-647 (D.Conn.1979); In re Christopher; New York State Higher Education Services Corporation v. Christopher, et al., 5 B.C.D. 214 (W.D.N.Y.1979); In re Espronceda; Coordinating Board, Texas College and University System v. Espronceda, 5 B.C.D. 267 (S.D.Tex.1979); see also In re Amadori; New York State Higher Education Services Corporation v. Amadori, et al., 5 B.C.D. 187 (W.D.N.Y.1979). On the other hand, an equal number of courts have concluded that the repeal of 20 U.S.C. § 1087-3 was of no effect with regard to cases commenced prior to the effective date of the BRA, October 1, 1979, and have denied the petitions for discharge in bankruptcy of otherwise nondischargeable student loan debts on that basis. See In re Henry; New York State Higher Education Services Corporation v. Henry, 5 B.C.D. 1014 (S.D.N.Y.1979); In re Erickson; Wisconsin Higher Educational Aids Board v. Erickson, 5 B.C.D. 734 (E.D.Wis.1979); In re Weinstein; Pennsylvania Higher Education Assistance Agency v. Weinstein, 5 B.C.D. 503 (E.D.Pa.1979); In re Kohn; New York State Higher Education Services Corporation v. Kohn, 5 B.C.D. 419 (S.D.N.Y.1979); In re Edson; Wisconsin Higher Educational Aids Board v. Edson, 4 B.C.D. 1191 (D.Nev.1979); In re Perkins; New York State Higher Education Services Corporation v. Perkins, No. B-78-00749 (D.Utah 1979); see also In re Garetano; New York State Higher Education Services Corporation v. Garetano, 79-C-953, 78-B-780 (E.D.N.Y.1979); In re Markovitz; New York State Higher Education Services Corporation v. Markovitz, CA-79-P-0576-S, B-78-01230 (N.D.Ala.1979); In re Hawes, et al. v. New Jersey Higher Education Assistance Agency, No. B78-28 (D.N.J.1979).
 
 
 15
 For the reasons hereafter set forth, we believe that the latter decisions have correctly interpreted the relevant provisions of the BRA. We conclude that the hiatus between the repeal of section 1087-3 of Title 20 and the effective date of its successor provision, 11 U.S.C. § 523(a)(8), was purely a manifestation of congressional inadvertence and that to follow blindly the plain meaning of the statute without regard to the obvious intention of Congress would create an absurd result in accord with neither established principles of statutory construction nor common sense. Accordingly, the decisions of the district court and the bankruptcy court below must be reversed.
 
 
 16
 Analysis of the legislative history of the BRA supports appellant's contention that the failure of the effective dates of the repeal and replacement statutes to coincide resulted from a mistake of Congress.[4] Section 1087-3 of Title 20 of the United States Code was enacted in 1976 to prevent abuse of the bankruptcy laws by students petitioning for bankruptcy immediately upon graduation without attempting to realize the potential increased earning capacity which education may provide. H.Rep.No.94-1232, 94th Cong., 2d Sess., 1 (1976); see also Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc.No.93-137, 93rd Cong., 1st Sess., 176-77 (1973), reprinted in L. King (ed.), Collier on Bankruptcy, app. v. 2, 176-77 (15th ed. 1979). By creating a special exception from discharge for education loans, Congress hoped to insure a more realistic view of a student's ability to repay the debt.
 
 
 17
 During the 95th Congress, however, bankruptcy reform legislation was introduced in the House of Representatives which included the repeal of section 1087-3 in order to "restore the law to where it had been before the 1976 amendment . . ." H.Rep.95-595, 95th Cong., 1st Sess., 132, reprinted in (1978) U.S.Code Cong. & Admin.News, pp. 5787, 6093.[5] This repeal provision, which was to take effect on the date of enactment of the legislation, was predicated upon the view that student abuses were not as widespread as had been thought and, therefore, did not warrant special treatment under the bankruptcy laws. This sentiment did not prevail, however, and when the legislation H.R. 8200 was reintroduced for further consideration in early 1978, the House, by amendment to section 523(a)(8) of the bill, adopted a replacement provision making nondischargeable educational loans insured or guaranteed under Part B of Title IV of the Higher Education Act of 1965, supra.[6]
 
 
 18
 Similar bankruptcy reform legislation was introduced in the Senate in October 1977 as S.2266. While § 317 of S.2266 also provided for the repeal of 20 U.S.C. § 1087-3, the bill contained a more comprehensive replacement provision in section 523(a)(8) excepting from discharge any debt for an educational loan. The effective date of both sections 317 and 523(a)(8) was October 1, 1979.
 
 
 19
 The differences between the House and Senate versions of the relevant provisions were resolved by the conference committee in September 1978. Because the Senate members would not acquiesce to the limited nondischargeability provision contained in H.R.8200, the committee amended the House bill by broadening the scope of section 523(a)(8) to make nondischargeable all educational loans owing to or insured or guaranteed by a governmental unit or a nonprofit institution of higher education. The committee failed, however, to notice that the section repealing 20 U.S.C. § 1087-3 as of the date of enactment remained in the House bill. Thus, as subsequently approved by Congress and signed into law by the President, the BRA contained the House repeal provision and, due to the insistence of the Senate conferees, a broad replacement provision, the effective dates of which did not coincide. There is no indication in the history of the BRA that Congress intended to legislate such an inconsistency or that it sought for some unexpressed reason to create an approximately eleven-month hiatus for the benefit of student loan debtors.
 
 
 20
 The inadvertence of this action was subsequently acknowledged by the Senate Committee on the Judiciary in its report issued in connection with corrective legislation enacted as Public Law 95-56, 93 Stat. 387, on August 14, 1979. In S.Rep.No.96-230, 96th Cong., 2d Sess., 2-3, reprinted in (1979) U.S.Code Cong. & Admin.News, pp. 1883-84, the Committee explained the legislation's purpose:
 
 
 21
 The gap in coverage of a prohibition on the discharge in bankruptcy of loans made under the Guaranteed Student Loan Program resulting from the early repeal of section 349A (sic) is very undesirable and totally inadvertent. Accordingly, section 1 of the bill revises the intent of section 439A to maintain the status quo until such time as 11 U.S.C. § 523(a)(8) becomes effective.Section 1 of the bill (H.R. 2807) closes the inadvertent "gap" created when the applicable section of the Higher Education Act of 1965 prohibiting discharge of student loans was repealed as of November 6, 1978, and its replacement section in Title II was not made effective until October 1, 1979. Congress obviously did not mean to create a gap and at all times held to the principle of nondischargeability of student loans . . .[7]
 
 
 22
 Although such an interpretation by a subsequent Congress is not necessarily controlling, it may be useful in determining the intention of an earlier Congress. Federal Housing Administration v. The Darlington, Inc., 358 U.S. 84, 90, 79 S.Ct. 141, 145, 3 L.Ed.2d 132 (1958); Banco Nacional de Cuba v. Farr, 383 F.2d 166, 175 (2d Cir. 1967), cert. denied, 390 U.S. 956, 88 S.Ct. 1038, 20 L.Ed.2d 1151 (1968); Esquire, Inc. v. Ringer, 591 F.2d 796, 803 (D.C. Cir. 1978), cert. denied, 440 U.S. 908, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979).
 
 
 23
 The language of the BRA gives further credence to this interpretation. In addition to the obvious significance of the inclusion of a more comprehensive exception provision in section 523(a)(8) of the BRA than had existed previously in section 1087-3 of Title 20 U.S.C., the BRA also includes a "savings" provision in section 403(a) which preserves the substantive rights of the parties to actions commenced prior to the effective date of the BRA. Section 403(a) provides as follows:
 
 
 24
 A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter or proceeding shall continue to be governed by the law applicable to such case, matter or proceeding as if the Act had not been enacted.
 
 
 25
 Because this section, together with the BRA as a whole, did not become effective until October 1, 1979, it is not dispositive of this appeal. However, we consider it persuasive evidence of Congress' desire not to impair the rights of parties to actions commenced under the old Bankruptcy Act.[8]
 
 
 26
 Finally, we note the apparent absurdity of a construction of the BRA which, for no discernible reason, would permit the discharge of student loans by debtors who, by sheer chance, have their bankruptcy petitions adjudicated during the eleven-month gap. Both before and after this period, nondischargeability has been and will continue to be the rule; absent an explicit statement of intent by Congress to provide a period of "amnesty" for student loan debtors, to recognize the repeal of section 1087-3 before giving effect to either section 523(a)(8) of the BRA or the savings provision in section 403(a) would, it seems to us, effectuate a legislative mistake prejudicial to the substantive rights of appellant.
 
 
 27
 The result of an obvious mistake should not be enforced, particularly when it "overrides common sense and evident statutory purpose." United States v. Babcock, 530 F.2d 1051, 1053 (D.C. Cir. 1976); United States v. Brown, 333 U.S. 18, 26, 68 S.Ct. 376, 380, 92 L.Ed. 442 (1948). It is a well established principle of statutory construction that a statute should not be applied strictly in accord with its literal meaning where to do so would pervert its manifest purpose. Nowhere has this principle been expressed more eloquently than by Judge Learned Hand in his concurring opinion in Guiseppi v. Walling, 144 F.2d 608, 624 (2d Cir. 1944), where he stated:
 
 
 28
 There is no surer way to misread any document than to read it literally; in every interpretation we must pass between Scylla and Charybdis; and I certainly do not wish to add to the barrels of ink that have been spent in logging the route. As nearly as we can, we must put ourselves in the place of those who uttered the words, and try to divine how they would have dealt with the unforeseen situation; and, although their words are by far the most decisive evidence of what they would have done, they are by no means final.
 
 
 29
 See also Peter Pan Fabrics, Inc. v. Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960); Federal Deposit Insurance Corp. v. Tremaine, 133 F.2d 827, 830 (2d Cir. 1943).
 
 
 30
 In this case, a literal application of the effective date of section 317 of the BRA, repealing 20 U.S.C. § 1087-3, would require us to disregard its intended purpose.[9] We hold, therefore, that the premature repeal of section 1087-3 is of no effect with respect to proceedings commenced prior to the effective date of the BRA on October 1, 1979.[10] Accordingly, the decision of the district court is hereby reversed, and the petitions at bar are remanded to the bankruptcy court for further proceedings in accordance with this opinion.
 
 
 
 *
 Of the United States District Court for the Eastern District of New York, sitting by designation
 
 
 [1]
 The twenty-one petitioners in bankruptcy involved in this action are Paul R. Adamo, Barbara Ann Barrington, Raymond A. Brimacomb, Michael S. Dempsey, Paul M. Gagnon, Eloise Hymes, Pamela R. Jurich, Leomia Linton, Kenneth W. Locey, Jr., Deborah Peters Mancuso, Diane K. Mayo, Denise K. Munnings, Karen Nielsen, Chandos C. Williams, Joan L. Williams, Raymond T. Wright, Jr., Marcia Lee Christopher, Phillip Lee Norton, Donald J. Salamone, Karen Stanley, and William M. Edwards. Each petition was filed between October 9, 1977 and October 2, 1978
 
 
 [2]
 Section 317 of the Bankruptcy Reform Act of 1978 ("BRA") provides that "Section 439A of part B of title IV of the Higher Education Act of 1965 (20 U.S.C. § 1087-3) is repealed." The effective date of this section appears in section 402(d) of the BRA, which provides that "(t)he amendments made by sections 217, 218, 230, 247, 302, 314(j), 317, 327, 328, 338, and 411 of this Act shall take effect on the date of enactment of this Act."
 
 
 [3]
 Section 402(a) of the BRA provides that "(e)xcept as otherwise provided in this title, this Act shall take effect on October 1, 1979."
 
 
 [4]
 Only a brief overview of the legislative history of the relevant sections of the BRA is included here. For more detailed analysis, see In re Edson; Wisconsin Higher Educational Aids Board v. Edson, 4 B.C.D. 1191 (D.Nev.1979); In re Kohn; New York State Higher Education Services Corporation v. Kohn, 5 B.C.D. 419 (S.D.N.Y.1979); In re Johnson; Pennsylvania Higher Education Assistance Agency v. Johnson, 5 B.C.D. 532 (E.D.Pa.1979); L. King (ed.), Collier on Bankruptcy, v. 3, P 523.18 (15th ed. 1979)
 
 
 [5]
 The basis for the House Judiciary Committee's conclusion is extensively set forth at pp. 132-62 of its Report No. 95-595, reprinted in (1978) U.S.Code Cong. & Admin.News, pp. 6093-123
 
 
 [6]
 House consideration of the amendment, including its text and the floor debate preceding its approval, appears at 124 Cong.Rec. H466-472 (daily ed. Feb. 1, 1978)
 
 
 [7]
 Section one of Pub.L.96-56 adds to the old Bankruptcy Act the exception to discharge language which prior to its repeal had been codified as 20 U.S.C. § 1087-3. Section two of Pub.L.96-56 provides that "(t)he amendments made by section 1 shall apply with respect to any proceeding commenced under the Bankruptcy Act during the period beginning on the date of enactment of this Act (August 14, 1979) and ending October 1, 1979."
 The bill was approved by both Houses of Congress by voice vote. The remarks of various members of Congress in support of the bill, either by floor speech prior to passage or by insertion in the Congressional Record, confirm the conclusion of the Senate Judiciary Committee quoted above. Senator DeConcini (D.Ariz.), principal sponsor and floor manager for the BRA in the Senate, explained the intent of Congress with respect to both the BRA and the correcting legislation:
 Mr. President, the passage of H.R.2807 will correct an error found in Public Law 95-598, the Bankruptcy Reform Act, that inadvertently created a "gap" in provisions of existing law concerning nondischargeability of student loans in a bankruptcy case. Public Law 95-598 repealed provisions in the Higher Education Act making student loans nondischargeable. It was the intent to merely shift the location of the nondischargeability provision from the Higher Education Act to the Bankruptcy Code, 11 U.S.C. However, . . . a "gap" was created between November 6, 1978, and October 1, 1979, when it can be argued that there is no nondischargeability provision in the law although it clearly was not the intent of Congress to have created such a gap.
 
 
 [125]
 Cong.Rec. S.9160 (daily ed. July 11, 1979). For statements by other members of Congress, see 125 Cong.Rec. H.2758-60 (daily ed. May 7, 1979)
 
 
 [8]
 In its Report accompanying S.2266, the Senate Judiciary Committee confirms that the provisions of the BRA are not to affect actions commenced under prior law. In S.Rep.No.95-989, 95th Cong., 2d Sess., 166 (1978) reprinted in (1978) U.S.Code Cong. & Admin.News, p. 5952, the Committee states:
 Subsection (a) makes clear that the provisions of this act are not to affect cases commenced under prior law, which are to proceed with respect to both substantive and procedural matters, in the same fashion as though this act were not in effect.
 The House Judiciary Committee expresses a similar understanding with respect to the analogous provision in H.R.8200:
 The new law will not affect cases commended (sic) under the old law. Those cases will proceed as though this Act did not take effect. The section applies to substantive as well as procedural matters, to matters governed by Federal bankruptcy law as well as matters governed by State law.
 H.Rep.No.95-595, 95th Cong., 1st Sess., 459 (1977), reprinted in (1978) U.S.Code Cong. & Admin.News, pp. 6414-15.
 
 
 [9]
 "(F)or the letter killeth but the spirit giveth life." 2 Corinthians 3.6
 
 
 [10]
 Because of our conclusion that the repeal of § 1087-3 of Title 20 U.S.C. was a mistake, we need not reach appellant's other contentions to the effect that (1) its cause of action is saved by 1 U.S.C. § 109 and (2) the law applicable to this action is that in effect on the date the petitions in bankruptcy were filed