Henry L. McNulty, Joyce, Capeless, Kilroy, McNulty & Roddy, Boston, Mass., for Massachusetts Higher Ed. Assistance Corp.

Philip Storme, Salem, Mass., for Robert J. MacKay, Jr., bankrupt.

## MEMORANDUM RE DISCHARGEABILITY OF A DEBT

**In re Robert J. MacKAY, Jr., Bankrupt.**

**MASSACHUSETTS HIGHER EDUCATION ASSISTANCE CORPORATION, Plaintiff,**

v.

**Robert J. MacKAY, Jr., Defendant.**

**Bankruptcy No. 78–2348–L.**

United States Bankruptcy Court, D. Massachusetts.

Dec. 15, 1980.

THOMAS W. LAWLESS, Bankruptcy Judge.

The Court has before it a complaint filed by Massachusetts Higher Education Assistance Corporation (the "plaintiff"), seeking to have a debt owed to it by the defendant/bankrupt, Robert J. MacKay, Jr. (the "defendant") declared nondischargeable. The plaintiff asserts that the obligation, which is based upon a guarantee of a student loan, is specifically made nondischargeable pursuant to Section 439A of the Higher Education Act of 1965, as amended (20 U.S.C. § 1086–3).[1]

The defendant contends that § 1087–3 is inapplicable to the present bankruptcy pro-

---

1. Section 1087–3 of Title 20 provides, in part:

   (a) A debt which is a loan insured or guaranteed under the authority of this part may be released by a discharge in bankruptcy under the Bankruptcy Act only if such discharge is granted after the five-year period . . . beginning on the date of commencement of the repayment period of such loan, except that prior to the expiration of that five-year period, such loan may be released only if the court in which the proceeding is pending determines that payment from future income or other wealth will impose an undue hardship on the debtor or his dependents.

ceeding since that section was repealed on November 6, 1978 by the enactment of the Bankruptcy Reform Act of 1978 (the "BRA"), Pub.L.95–598 and the defendant's petition in bankruptcy was filed thereafter on December 6, 1978. While acknowledging that the BRA also contained a substitute provision limiting the dischargeability of guaranteed student loans, the defendant points out that the substitute provision became effective on October 1, 1979, a date eleven months after § 1087–3 was repealed. The defendant argues that in view of the fact that his bankruptcy petition was filed during this eleven-month "gap", during which time no law excepted guaranteed student loans from the effect of a discharge, this Court should find that its debt to the plaintiff is dischargeable.

The plaintiff, on the other hand, contends that the repeal of § 1087–3 by the BRA was not intended to affect proceedings commenced under the former Bankruptcy Act and that, therefore, § 1087–3 controls the determination of the dischargeability of the defendant's debt. The plaintiff maintains that in the BRA Congress clearly manifested an intent that all proceedings commenced under the Bankruptcy Act were to be decided as if the BRA had not been enacted. Therefore, the plaintiff concludes that despite the statutory language in the BRA apparently repealing § 1087–3 prior to the effective date of the replacement provision in the BRA (which the plaintiff alleges resulted from congressional inadvertence), no gap was created and the student loan continues to be a dischargeable debt.

The facts of this case are straightforward and are not contested by either party. On January 10, 1975, the defendant obtained an educational loan in the amount of $1,200.00 from the Shawmut Bank of Boston. Repayment of the loan was guaranteed by the plaintiff. On March 15, 1978, the defendant

renewed the note to the Shawmut Bank and subsequently made three payments totaling $133.00. Thereafter, the defendant made no further payments, and on December 6, 1978, the date the bankruptcy petition was filed, the defendant's obligation to the Shawmut Bank was $1,134.00. The plaintiff, under its contract of guaranty, paid the defendant's debt to the Shawmut Bank and became the assignee of the Shawmut Bank's note.

The sole issue before this Court is the applicability of § 1087–3 (the provision limiting the discharge of guaranteed student loans) to a bankruptcy petition filed subsequent to the alleged repeal of that section and prior to the effective date of its successor provision in the BRA.

A brief description of the legislative history of the provisions dealing with the dischargeability of guaranteed student loans provides insight into the problem before the Court.[2] Prior to the enactment of § 1087–3, the discharge in bankruptcy of guaranteed student loans was treated as any other type of dischargeable debt. With the enactment of § 1087–3, however, in bankruptcy proceedings initiated on or after September 30, 1977, guaranteed student loans were excepted from the effect of a discharge in bankruptcy, with two minor exceptions not relevant to the present discussion.[3]

On November 6, 1978, the BRA was enacted. While earlier versions of the bill (in versions proposed in the House of Representatives) had suggested that the restrictions on the discharge of guaranteed student loans be removed and that they again be treated as dischargeable debts, that position was ultimately rejected. In fact, Congress in the finally enacted version of the BRA repealed § 1087–3 and replaced it with a broader and more comprehensive section (11 U.S.C. § 523(a)(8)) restricting the dis-

---

2. For an extensive examination of the legislative history in this area, see, In re Adamo, 619 F.2d 216 (2d Cir. 1980); In re Kohn, 5 BCD 419 (S.D.N.Y.1979); In re Edson, 4 BCD 1191 (D.Nev.1979).

3. As set forth in note 1 supra, pursuant to 20 U.S.C. § 1087–3 student loans could be discharged in bankruptcy only if: (1) the discharge was granted five years after the date repayment first became due; or (2) repayment of the loan would impose undue hardship on the debtor or his dependents.

charge of student loans.[4] However, in working out the final compromise on the student loan discharge provision Congress inadvertently failed to have the date for the repeal of § 1087–3 coincide with the effective date of § 523(a)(8).[5] That is, the BRA provided that the repeal of § 1087–3 was effective on the date of its enactment, November 6, 1978,[6] while the successor provision was not effective until October 1, 1979.[7]

Realizing that it had committed an oversight by failing to have the effective dates of the repealer and successor provisions coincide, Congress, on August 14, 1979, enacted corrective legislation (Public Law 96–56) designed to close the unintended gap. This act was effective from the date of its enactment until October 1, 1979, when § 523(a)(8) became effective. The legislative history of Public Law 96–56 makes abundantly clear

that Congress never intended to create an eleven-month hiatus during which time guaranteed student loans would be dischargeable and that the creation of such a gap period was merely the result of a congressional error.

Recently, the Courts of Appeals for the Second and Seventh Circuits have addressed the problem presently before this Court— the dischargeability of guaranteed student loans during the alleged gap period. In *In re Adamo*, 619 F.2d 216 (2d Cir. 1980) and *Wisconsin Higher Education Aids Board v. Lipke*, 630 F.2d 1225, 6 B.C.D. 1023 (7th Cir. 1980), the Courts found that the premature repeal of § 1087–3 prior to the effective date of the successor provision of the BRA to be the result of congressional inadvertence. Both Courts agreed that it would be improper to blindly adhere to the strict

---

**4.** Section 523(a)(8) of the Bankruptcy Reform Act provides:

(a) A discharge under sections 727, 1141, or 1328(b) of this title does not discharge an individual from any debt—

.    .    .    .    .

(8) for an educational loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution of higher education, unless—

(A) such loan first became due before five years before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

**5.** The legislative maneuvers which led to Congress' inadvertent failure to make the dates of the repeal and the effective date of the replacement section coincide are set forth by the Second Circuit Court of Appeals in *In re Adamo, supra* at 220:

During the 95th Congress ... bankruptcy reform legislation was introduced in the House of Representatives which included the repeal of Section 1087–3 in order to "restore the law to where it had been been before the 1976 amendment ..." ... This repeal provision, which was to take effect on the date of enactment of the legislation, was predicated on the view that student abuses were not as widespread as had been thought and, therefore, did not warrant special treatment under the bankruptcy laws. This sentiment did not prevail, however, and when the legislation—H.R. 8200—was reintroduced for further consideration in early 1978, the House, by amendment to section 523(a)(8)

of the bill, adopted a replacement provision making nondischargeable educational loans insured or guaranteed under Part B of Title IV of the Higher Education Act of 1965....

Similar bankruptcy reform legislation was introduced in the Senate in October, 1977 as S. 2266. While § 317 of S. 2266 also provided for the repeal of 20 U.S.C. § 1087–3, the bill contained a more comprehensive replacement provision in Section 523(a)(8) excepting from discharge any debt for an educational loan. The effective date of both sections 317 and 523(a)(8) was October 1, 1979.

The differences between the House and Senate versions of the relevant provisions were resolved by the conference committee in September, 1978. Because the Senate members would not acquiesce to the limited nondischargeability provision contained in H.R. 8200, the committee amended the House bill by broadening the scope of Section 523(a)(8) to make dischargeable all educational claims owing to or insured or guaranteed by a governmental unit or a nonprofit institution of higher education. The committee failed, however, to notice that the section repealing 20 U.S.C. § 1087–3 as of the date of enactment remained in the House bill. Thus, as subsequently approved by Congress and signed into law by the President, the BRA contained the House repeal provision and, due to the insistence of the Senate conferees, a broad replacement provision, the effective dates of which did not coincide. [Footnotes omitted.]

**6.** Section 402(d) of the BRA.

**7.** Section 402(a) of the BRA.

language of the statute to enforce this obvious mistake when to do so would produce an absurd result directly contrary to the clear intent of Congress to keep student loans nondischargeable. Each Court held, therefore, that the repeal of § 1087–3 was of no effect with respect to bankruptcy proceedings commenced prior to October 1, 1979.

In *Adamo*, the earlier of the two cases, the Court's conclusion that the gap was the result of congressional error was based upon a thorough analysis of the legislative history of relevant provisions of the BRA.[8] After making such an examination the Court found:

> There is no indication in the history of the BRA that Congress intended to legislate such an inconsistency [the premature repeal of § 1087–3 prior to the effective date of the successor provision in the BRA] or that it sought for some unexpressed reason to create an approximately eleven-month hiatus for the benefit of student loan debtors. (*Supra* at 220).

The Court also relied upon the actual language of the BRA to buttress this conclusion. The Court first cited the fact that the student loan dischargeability provision in the BRA was more comprehensive than the provision which it replaced. Secondly, the Court relied on § 403(a) of the BRA[9] (known as the "savings provision") as indicative of Congress' intention that proceedings commenced under the former Bankruptcy Act were to be decided as if the BRA had not been enacted and that the repeal of § 1087–3 should not affect the determination of the dischargeability of student loans in any case filed prior to October 1, 1979.[10]

In rejecting the literal construction of the statutory language and thereby holding the repeal of § 1087–3 ineffective until October 1, 1979, the Court in *Adamo* placed great weight on the unreasonable result which would flow from a literal reading of the statute. The Court pointed out that such an interpretation would, for no "discernible reason" and only as a result of congressional inadvertence, cause student loans to be dischargeable during an eleven-month period when before and after that period such loans were and would continue to be nondischargeable.

While the Court in *Adamo* was concerned with the dischargeability of student loans filed prior to the repeal of § 1087–3 and adjudicated during the gap period, the reasoning of that case is applicable herein. In fact, in *Lipke* where the Seventh Circuit Court of Appeals was dealing with precisely the same circumstances as are present herein (i. e. bankruptcy petitions filed after the repeal of § 1087–3 during the alleged gap period), that Court held that the reasoning of *Adamo* was both applicable and persuasive and thus followed the Second Circuit's opinion.

This Court finds the analyses and reasoning set forth by courts in the *Adamo* and *Lipke* opinions convincing and adopts that reasoning herein. Thus, I reject a literal reading of the statutory language which would undeniably defeat the clear intent of Congress to keep guaranteed student loans nondischargeable. In accord with the holdings of *Adamo* and *Lipke*, I find that the repeal of § 1087–3 is ineffective with respect to bankruptcy petitions filed prior to October 1, 1979, and therefore that § 1087–3 is applicable to the present proceeding.

In light of this Court's ruling that § 1087–3 is applicable herein, the defend-

---

8. *See*, note 5 *supra*.

9. Section 403(a) of the BRA provides:
   A case commenced under the Bankruptcy Act, and all matters and proceedings relating to such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter or proceeding shall con-

tinue to be governed by the law applicable to such case, matter or proceeding as if the Act had not been enacted.

10. The Court noted, however, that since § 403(a) did not become effective until October 1, 1979, that section was not dispositive of the issue but was merely persuasive evidence of the intention of Congress.

ant's debt may only be determined dischargeable if repayment of the debt is found to impose undue hardship on the defendant or his dependents. At this time the Court is unaware whether the defendant intends to assert that he is entitled to a hardship discharge. Therefore, the defendant is directed to notify the Court within fifteen (15) days from the date of this Memorandum if he intends to seek a hardship discharge. If the defendant so decides, the Court will forthwith set down that matter for a hearing; however, if the defendant does not assert that he is entitled to a hardship discharge, the Court will enter judgment for the plaintiff in accordance with this Memorandum.