CONNECTICUT STUDENT LOAN FOUNDATION *v.*
ARTHUR J. GRANT, JR.

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE No. 61225
WATERBURY

Memorandum filed January 20, 1984

*Robert F. Ludgin,* for the plaintiff.
*Trantolo & Trantolo,* for the defendant.

STOUGHTON, J. This case was removed from the fact-finders list and submitted to the court for judgment on stipulated facts.

Between April 3, 1975, and August 16, 1976, the defendant received four student loans totaling $4177. He signed four notes in favor of Mattatuck Bank and Trust Co., each bearing interest at 7 percent. The plaintiff, as guarantor of each of the notes, paid the bank in full when the notes matured and now seeks to recover from the defendant.

The defendant filed for bankruptcy in December, 1978, in the United States Bankruptcy Court at Hartford and listed the plaintiff as a creditor. The plaintiff filed a complaint with that court for a determination that the defendant's student loans were nondischargeable.

On February 7, 1979, the Bankruptcy Court at Bridgeport issued its decision in *Matthews* v. *Connecticut Student Loan Foundation,* Bankr. L. Rep. (C.C.H.) ¶67,049 (D. Conn. 1979) Bankruptcy No. B-78-390. The Bankruptcy Court found that excepting the debt from discharge would impose an undue hardship on the debtor, but it also decided that Congress had unintentionally, in the Bankruptcy Reform Act, provided that between November 6, 1978, and October 1, 1979, educational loans were dischargeable debts.

The plaintiff withdrew its complaint on or about April 27, 1979, clearly acting in reliance on the *Matthews* decision. The defendant was adjudged a bankrupt on March 2, 1979, and was discharged of all his dischargeable debts.

On April 16, 1980, the United States Court of Appeals for the Second Circuit decided that the premature repeal of § 1087-3 of Title 20 of the United States Code, the Higher Education Act of 1965, by § 317 of the

Bankruptcy Reform Act of 1978 (BRA), P.L. 95-598, which resulted in the "gap" between November 6, 1978, and October 1, 1979, was an obvious mistake which is of no effect with respect to proceedings commenced prior to the effective date of the BRA on October 1, 1979. *In re Adamo,* 619 F.2d 216 (2d Cir.), cert. denied sub nom. *Williams* v. *New York State Higher Education Services Corporation,* 449 U.S. 843, 101 S. Ct. 125, 66 L. Ed. 2d 52 (1980). The plaintiff brought this action in 1982 and the defendant raised three special defenses. The third special defense, res judicata, was stricken *(Glass, J.).* The first special defense claimed that the withdrawal of the complaint in the Bankruptcy Court constituted a waiver. The second special defense claimed that the action violated the injunction contained in the bankruptcy discharge prohibiting creditors whose debts were discharged from instituting any action to collect such debts as personal liabilities.

Under the former bankruptcy law, student loans were excepted from dischargeability in bankruptcy unless such loans became due more than five years before the filing of the petition or unless nondischargeability would cause substantial or undue hardship. 20 U.S.C. (1976 Ed.) § 1087-3. This provision was repealed by § 317 of the BRA, which was enacted November 6, 1978. The new BRA, however, did not become effective until October 1, 1979, thus creating a "gap" period. The gap resulted from a compromise between an amended House bill excepting discharge to federally insured loans, and the Senate provision extending the exception to governmental units and nonprofit institutions of higher education. *Ford* v. *New York State Higher Education Services Corporation,* 22 B.R. 442, 444–45 (W.D.N.Y. 1982).

The BRA is broader in scope than 20 U.S.C. § 1087-3, but states essentially the same principle that student loans are not to be discharged in bankruptcy with two

exceptions not applicable in the present action. 11 U.S.C. § 523 (a) (8). Thus, the original intent that these debts be excepted from discharge remains. *Wisconsin Higher Educational Aids Board* v. *Lipke,* 630 F.2d 1225, 1230 (7th Cir. 1980).

The defendant argues that because his petition in bankruptcy was adjudicated during the "gap" period, the student loan debts were discharged.

Although a literal interpretation of the statutes leads to the conclusion that debts discharged between November 6, 1978, and October 1, 1979, would include student loans, this reading would fly in the face of congressional intent. *Williamson* v. *Board of Regents,* 665 F.2d 683, 685 (5th Cir. 1982). It is evident that the legislators made a mistake with the gap since the legislative history shows that the gap was unintended and that Congress wanted the old act to apply. *New York State Higher Education Services Corporation* v. *Henry,* 1 B.R. 295, 298–99 (S.D.N.Y. 1979). Congress could not have intended to give an eleven month holiday in which student loans would be discharged for some individuals because they fortuitously filed petitions during the hiatus. *Wisconsin Higher Educational Aids Board* v. *Lipke,* supra, 1228, 1230. Thus, the gap was simply a "manifestation of congressional inadvertence." *In re Adamo,* supra, 219.

Although a court will generally follow the letter of the law where it is clear, it will allow the primacy of intent over letter; *Ozawa* v. *United States,* 260 U.S. 178, 194, 43 S. Ct. 65, 67 L. Ed. 199 (1922); where literal interpretation would lead to a clearly unreasonable result contrary to Congress' intention. *Massachusetts Higher Education Assistance Corporation* v. *MacKay,* 7 B.R. 703, 706 (D. Mass. 1980). The question is not one of construction but one of repair. *Georgia Higher Education Assistance Corporation* v. *Broughton,* 6 B.R.

1011, 1016 (N.D. Ga. 1980). "A thing may be within the letter of a statute and not within its meaning, and within its meaning, though not within its letter." Id., 1017, quoting *Smythe* v. *Fiske,* 90 U.S. (23 Wall.) 374, 380, 23 L. Ed. 47 (1874). Thus, although the gap period *technically* exists, the policy of excepting higher education loans from discharge would be applied to proceedings between November 6, 1978, and October 1, 1979. See *Massachusetts Higher Education Assistance Corporation* v. *Packer,* 9 B.R. 884, 886 (D. Mass. 1981).

Moreover, once Congress realized what had occurred, it enacted P.L. 96-56 which added to the old bankruptcy law "the exception to discharge language which prior to its repeal had been codified as 20 U.S.C. § 1087-3." *Broughton,* supra, 1015. The Senate report to this corrective legislation stated that the gap was "very undesirable and totally inadvertent." Senate Report 96-230, in *Broughton,* supra, 1016. P.L. 96-56 only applied to adjudicated petitions from its enactment date, August 14, 1979, through October 1, 1979, thus leaving the gap partially open. P.L. 96-56 (2). Subsequent case law has held that this, too, was inadvertent and thus the gap should be considered closed; *Broughton,* supra, 1016; since nondischargeability was the statutory rule before and after the gap. *Wisconsin Higher Educational Aids Board* v. *Lipke,* supra, 1230.

The defendant was adjudicated a bankrupt on March 2, 1979, and all "dischargeable" debts were discharged as of that date. Simply because the discharge fell within the gap period will not discharge the defendant's student loans and the old bankruptcy law must apply. *In re Adamo,* supra, 222; *Massachusetts Higher Education Assistance Corporation* v. *MacKay,* supra, 706. Accordingly, absent a showing of undue hardship or

that the notes matured more than five years prior to bankruptcy, the defendant cannot have his student loan discharged.

The defense of waiver is inapplicable in this case because the plaintiff was acting upon the law as it had been expressed in this district when it withdrew its complaint in Bankruptcy Court. Waiver is the intentional relinquishment of a known right. The plaintiff did not intend to relinquish anything but relied upon the *Matthews* case, supra, which held that the debts were dischargeable.

The second special defense is not effective in this case because only creditors whose debts were discharged were enjoined from instituting actions to collect those debts. Since the debts owed to the plaintiff were not dischargeable, the plaintiff should not be enjoined from proceeding to collect.

Judgment may enter for the plaintiff.